WASHINGTON MILLS EMERY MANUFACTURING COMPANY *vs.*
WEYMOUTH AND BRAINTREE MUTUAL FIRE INSURANCE
COMPANY.

Norfolk.   November 14, 15, 1882; January 4. — September 8, 1883.

An owner of land with buildings thereon conveyed the land to a city by a deed containing the following clause. "The grantor excepts and reserves to himself all of the buildings and structures standing on the granted lands, with all machinery and fixtures; provided, however, that the same shall be removed from the granted premises by the grantor, at his sole expense, before" a day named, "and if not so removed the grantor forfeits all right thereto, and the same shall thenceforth be the absolute property of said city." The buildings were insured against loss by fire by the grantor, after the date of the deed, and were burned before the day limited by the deed for their removal. *Held,* that the insured was the owner of the buildings at the time of the loss.

An owner of land with buildings thereon, upon which he had insurance against loss by fire, sold the land, retaining the ownership of the buildings, and obtained new insurance thereon in the same company. The assured at the time of effecting the new insurance said nothing about the change of title in the land; and the insurer was ignorant of it; but there was no fraud on the part of the assured. *Held,* that the policy was not avoided.

An owner of land with buildings thereon conveyed the land by a deed, which reserved to the grantor the ownership of the buildings, if removed from the land before a day named, and if not so removed they were to be forfeited to the grantee of the land. After the conveyance, the grantor obtained insurance on the buildings against loss by fire; and they were destroyed by fire before the day limited by the deed for their removal. *Held,* in an action by him on the policy, that he was entitled to recover the actual intrinsic cash value of the property destroyed, without regard to the fact that it was to be removed by a day named.

CONTRACT upon a policy of insurance for $2400, against loss by fire, issued by the defendant company, dated February 5, 1878, for the term of one year, upon a frame building in Ashland, which was totally destroyed by fire on August 17, 1878. At the trial in the Superior Court, before *Putnam,* J., the only evidence put in by either side was the report of an auditor. The judge declined to give certain rulings requested by the defendant; ordered a verdict for the plaintiff in the sum of $2400; and reported the case for the determination of this court. The facts and rulings requested appear in the opinion.

The case was argued at the bar in November, 1882; and was afterwards considered on briefs by all the justices.

*J. P. Treadwell*, for the defendant.

*S. Lincoln*, for the plaintiff.

MORTON, C. J.   1. Upon the facts found by the auditor, it is admitted that, at the time the insurance was effected, and at the time of the loss, the plaintiff had an insurable interest in the property covered by the policy.   The extent and value of that interest are in controversy.   The plaintiff, being the owner of the buildings and of the land on which they stood, made a deed of the land to the city of Boston, dated November 20, 1877, which contained the following clause: "The grantor corporation excepts and reserves to itself all of the buildings and structures standing on the granted lands, with all machinery and fixtures; provided however that the same shall be removed from the granted premises by the grantor corporation, at its sole expense, before the first day of October next, and if not so removed the grantor forfeits all right thereto, and the same shall thenceforth be the absolute property of said city."   There can be no reasonable doubt that the intention of the parties was that the buildings should remain the property of the grantor, with the right to remove and dispose of them at any time before the first day of October.   The law presents no obstacle to the carrying this intention into effect.   It is not material whether the clause operates technically as an exception, or as an agreement detaching the buildings from the realty and making them personal property, which was to belong to, and be at the disposal of, the grantor.   The buildings were not conveyed to the city, but remained the property of the plaintiff.   It is not necessary to consider what would have been the rights of the parties after October 1, 1878, as the buildings were burned before that time.

The Superior Court rightly refused the first and second requests for instructions made by the defendant.*

---

* These requests were as follows: "1. The deed by the plaintiff to the city of Boston conveyed the title and ownership of the building, described in the policy, to the said city, and reserved only to the assured the right to acquire ownership therein at a future time, contingent on removal of the building from the land before October 1, 1878.   2. The assured at the time of the loss owned in said building a privilege of removal only, and that was the extent of its estate in the same."

2. The plaintiff had held a previous policy issued by the defendant at the time the plaintiff owned the land as well as the buildings; and the defendant asked the court to rule that the plaintiff could not recover, because he did not disclose the change of title at the time of procuring the policy in suit. The court rightly refused this ruling.

The facts found by the auditor, being uncontrolled, are to be taken as true. He has found that no fraud was committed or attempted by the plaintiff or any of its agents. The plaintiff made no misrepresentations and no concealment as to its title. The policy is upon the buildings. The defendant saw fit to issue this policy without any specific inquiries of the plaintiff as to the title to the land, and without any representations by the plaintiff upon this point. It was its own carelessness, and it cannot avoid the policy without proving intentional misrepresentation or concealment on the part of the plaintiff. An innocent failure to communicate facts about which the plaintiff was not asked will not have this effect. *Commonwealth* v. *Hide & Leather Ins. Co.* 112 Mass. 136. *Fowle* v. *Springfield Ins. Co.* 122 Mass. 191. *Walsh* v. *Philadelphia Fire Association,* 127 Mass. 383.

3. The defendant asked the court to rule that, on the facts found, no contract ever existed between the plaintiff and the defendant, or, if it existed, was avoided because the minds of the parties never met, and the risk undertaken was unknown to, or misunderstood by, the defendant. The court could not properly give this ruling. The parties entered into a written contract, clear and unambiguous in its terms. The minds of the parties did meet upon these terms. The fact that the defendant neglected to obtain full information as to the situation of the subject matter of the contract, or of the extent and character of the risk, cannot, in the absence of fraud or imposition, avoid the contract.

4. The other rulings requested relate to the question of damages.

The auditor adopted as the rule of damages, that the plaintiff is entitled to recover the actual intrinsic cash value of the property destroyed, and to such a sum as it would have cost at the time of the fire to have replaced and restored the property to

the condition in which it was before, without regard to the fact that it was to be removed on the first day of October; and he found such value to be more than the insurance. He also found in the alternative, that, if the rule was that the plaintiff could recover only the relative value to the plaintiff of the building subject to removal before October 1, 1878, then such value was $400. It seems to us clear that the last rule does not furnish the plaintiff an indemnity according to the contract of the parties. Even if the rule were that the insured could recover only the actual ultimate loss in money to him caused by the fire, the market value of the buildings subject to removal would not be a fair test of such loss. It might be of great importance to him that he should have the use of the buildings up to October 1, for the completion of contracts and for carrying on his manufacture, and so the actual loss caused by the fire might be large. Besides, there was the possibility, and in this case the great probability, that the insured could by an arrangement with the city of Boston extend his lease or license to occupy the land for a longer period. But we do not think that, in adjusting a loss, the true rule of indemnity is to ascertain what the actual loss to the plaintiff is, or, in other words, to what extent he has suffered by the fire. It often happens that the insured may gain an advantage by the fire, by reason of some collateral contracts or relations with other parties. Thus, a mortgagee has an insurable interest in the mortgaged property; he may insure his interest generally, and need not disclose the peculiar nature of it, unless inquired of; and, in case of loss, he is entitled to recover to the amount of his debt, and apply the money to his own use, not accounting with the mortgagor, and it is no defence that his title is a defeasible one, or that he suffers no actual loss by the fire because his security remains sufficient. *King* v. *State Ins. Co.* 7 Cush. 1. *Suffolk Ins. Co.* v. *Boyden*, 9 Allen, 123. This was so held in a case where the mortgagor had repaired the building before the commencement of the suit, so that it was made as valuable as it was before the fire. *Foster* v. *Equitable Ins. Co.* 2 Gray, 216. So the market value of the property burned is not always a fair rule of adjustment. The contract of the insurer is not that, if the property is burned, he will pay its market value; but that he will indemnify the assured, that is, save him

harmless, or put him in as good a condition, so far as practicable, as he would have been in if no fire had occurred.

In the case before us, we think the rule adopted by the auditor is the true rule. It complies with the letter and spirit of the contract, and is the only rule which will give full indemnity to the assured without injustice to the insurer. It would work an exact indemnity if the insurer could have, on the day after the fire, replaced the buildings in the same condition they were in before the fire. The insured would then have been saved harmless, and would have neither gained nor lost by the fire. This is not practicable, but the rule adopted by the auditor is as near an approach to this exact indemnity as is practicable. The insurer cannot complain if he pays no more than the value of the property he has insured, no more than the sum insured upon it, and no more than the interest of the insured at the time of the loss. He thus pays no more than an indemnity under his contract. It is no defence to him that the loss may, by reason of other collateral and independent contracts, give an advantage to the insured.

Chancellor Kent in his Commentaries states the rule to be, that, " if a tenant erects a building on a lot held under a lease, with liberty to renew or remove the building at the end of the lease, and the building be destroyed by fire a few days before the end of the lease, though the building as it stood was worth more than the sum insured, and if removed, would have been worth much less, yet the courts look only to the actual value of the building as it stood when lost, and they do not enter into the consideration of these incidental and collateral circumstances, in fixing the true standard of indemnity;" and he cites with approval the well-considered case of *Laurent* v. *Chatham Ins. Co.* 1 Hall, 41. 3 Kent Com. 376.

The case at bar is governed by the same principles; and a majority of the court is of opinion that the ruling of the Superior Court, that, upon the facts proved, the plaintiff was entitled to recover the whole amount insured upon the buildings destroyed, was correct. *Judgment on the verdict.*