[No. 2319.  Decided December 10, 1896.]

E. W. DOOLY, *Appellant*, v. THE HANOVER FIRE IN-
SURANCE COMPANY OF NEW YORK, *Respondent*.

FIRE INSURANCE — CONDITIONS OF POLICY AS TO OWNERSHIP — WAIVER.

A condition in a policy of fire insurance that the policy should
be void, " if the interest of the insured in the property covered by
said policy be other than unconditional or sole ownership, or if the
subject of insurance be a building on ground not owned by the in-
sured in fee simple," will not prevent a recovery by the insured for
a loss, although not the owner of a fee simple title, when the appli-
cation for the policy was an oral one, and no questions were asked
and answered concerning the title nor any intentional misrepre-
sentation in regard thereto made by the insured.

Appeal from Superior Court, Yakima County.—Hon.
CARROLL B. GRAVES, Judge.  °Reversed.

*H. J. Snively*, and *Fred Miller*, for appellant.

*Reavis & Englehart*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought in the supe-
rior court of Yakima county by the plaintiff (appellant
herein) to recover from the respondent upon an insur-
ance policy.  The policy was issued on the 12th day
of June, 1895, in consideration of the payment by the
plaintiff to the defendant of the premium of $33.80,
the amount of the policy being $1,000 upon building,
$200 upon furniture and fixtures, and $1,000 upon
stock of wines, liquors and cigars.  The lot upon
which the property insured was situated was held by
plaintiff under a contract of purchase with one Walter
N. Granger, a trustee.  The plaintiff testified that at
the time of the issue of the policy he had paid the
purchase price in full and was entitled to a deed there-

for.   The building was burned and a certain amount of fixtures and stock of wines, liquors, etc., destroyed. No adjustment could be made, and suit was brought to recover the amount of the policy.

The defense in this action, so far as it is necessary to discuss it here, was based upon a condition in the policy which was as follows:

"This entire policy unless otherwise provided by agreement endorsed hereon or added hereto, shall be void, if the interest of the insured in the property covered by said policy be other than unconditional or sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, or if the subject of insurance be personal property and be or become incumbered by chattel mortgages."

This provision of the policy was especially pleaded, and upon the close of plaintiff's testimony, on motion of the defendant the case was taken from the jury and dismissed at plaintiff's cost.   No written application was made for this policy, and the undisputed testimony is that no questions were asked the insured concerning the title to the land.   It also developed in the trial of this cause that there was a mortgage upon certain of the goods, but the testimony of the plaintiff was to the effect that he made this known to the agent of the insurer.   The testimony was as follows:

"Question: What did you say about this mortgage? Answer: He wanted to know whether the property was encumbered, and I said it was, and he wanted to know for how much, and I told him I couldn't tell without looking it up; there was a mortgage on the Zillah property and a mortgage on the North Yakima property to satisfy a debt of Rothchild Brothers.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Did he ask you anything about the ownership of the property?   A. No, sir.

"Q. Did you make any statement whatsoever about the ownership of the property? · A. No, sir.

Further on in direct examination, after being recalled, the following appears:

"*Question:* Who was the owner of this property that was destroyed?  *Answer:* I was.

"Q. Both the real property and the personal property?  A. Yes, sir.

"Q. And the buildings?  A. Yes, sir.        ·

"Q. Now, I want to ask this question, I am not sure that I covered it entirely: Did you make any statement to Mr. Leeper, that is the agent; I believe I asked you whether he asked you any questions about the title?  A. Yes, sir.

"Q. And his answer was (no).  Did you make any statement to him about the title?  A. No, sir.

"Q. None whatever?  A. No more than I told him there was a mortgage upon the property.

"Q. Did you make any statement except about this mortgage on the property, this mortgage to Rothchild Brothers?  A. That is all.

There having been no written application in which questions were asked and answered concerning the status of the property, we think, under the authorities and as a question of right, that this condition which is injected into the policy, among numerous other conditions more or less technical and hard to understand by the ordinary mind, ought not to prevent a recovery, in the absence of any misrepresentation on the part of the insured.   The insured, as a matter of fact, ordinarily knows nothing about the policy until it is made out and returned to him after the payments for the same have been made to the agent at the time the contract was made, and the insurer, having failed to obtain this information, must be held to have done so at its peril.

Even where an application has been made, which

is the instrument to which the insured's attention is especially called and upon which he relies, it is held that where the language of the questions contained in the application calls for answers, which may be to some extent a matter of opinion, if the insured answers in good faith, he will be excused though he does not give the desired answer.    May, Insurance, § 166.

The ordinary layman is not presumed to know what a fee simple title is, and, in the absence of any questions which would tend to enlighten him as to the true definition of that phrase, he might very well conclude that he was the owner in fee simple, if he was the owner and in possession and had such title to the property as is testified to by the assured in this case. Much more liberally ought the language to be construed when it is found in the policy alone and not in an application to which the assured is directly a party.

"The issuing of a policy," says Mr. May in the section above referred to, " on an application which without fraud contains no answer to certain questions is a waiver of answer to those questions, even though in answer to another question the insured may have said there were 'no other circumstances affecting the risk;' and to avoid the policy in such cases the insurers must prove untrue statements other than those inquired about."

The rule as announced by Wood on Insurance, § 212, is as follows:

"When no inquiries are made, the *intention* of the insured becomes material, and in order to avoid the policy, they must find, not only that the matter *was material, but also that it was intentionally fraudulently concealed.*"

And in *Insurance Company of North America v. Bachler*, 44 Neb. 549 (62 N. W. 911), it was held that:

" Where the insured was not questioned as to en-

cumbrances on his property, and did not intentionally conceal the facts, the existence of a mortgage thereon did not invalidate the policy,"

following *Van Kirk v. Citizens' Ins. Co.*, 79 Wis. 627 (48 N. W. 798).

The court in that case found that the existence of the mortgage on the property was a fact material to the risk, but that, no inquiries having been made by the agent of the insurance company as to the condition of the title to the property, and the insured having said nothing about the existence of the mortgage for the reason that he did not know that it was his duty to disclose the existence of the mortgage, it was not, under the circumstances, a representation that the insured property was free from the mortgage.

In *O'Brien v. Ohio Ins. Co.*, 52 Mich. 131 (17 N. W. 726), it was held that:

"Where insurance is applied for orally, and the applicant is unaware of any provision in the policy regarding incumbrances, and is not guilty of any misleading conduct, his bare silence cannot be deemed a misrepresentation; and if the agent in such a case did not read the policy to the applicant, or call his attention to the clause relating to incumbrances, the existence of a mortgage would be no impediment to a recovery from the insurance company."

"If an insurer," said the court, "is apparently indifferent whether a property is unincumbered, and is content to insure without in any way suggesting an interest in the question, the bare silence of the applicant upon it cannot be deemed a misrepresentation."

In *Clark v. Manufacturers' Insurance Co.*, 8 How. 235, after giving the general rule concerning the answering of questions, the court says:

"But the relation of the parties seems entirely changed, if the insurer asks no information and the

insured makes no representations.  That is the chief novelty in this question, as hypothetically stated in the bill of exceptions.  We think that the governing test on it must be this,—it must be presumed that the insurer has in person or by agent in such a case obtained all the information desired as to the premises insured, or ventures to take the risk without it, and that the insured being asked nothing, has a right to presume that nothing on the risk is desired from him."

And further on the court says:

"But when representations are not asked or given, and with only this general knowledge the insurer chooses to assume the risk, he must in point of law be deemed to do it at his peril.  'With this knowledge, and without asking a question, the defendant underwrote; and by so doing he took the knowledge of the state of the place upon himself,' etc."

Citing 1 Marshall on Insurance, 481, 482; *Carter v. Boehm*, 3 Burr. 1905, and a distinction is made between cases of fire insurance and of marine insurance, because in the case of fire insurance the subject insured is usually situated on land and nearer, so as to be examined more easily by the company or its agents, and the circumstances connected with it are more uniform and better known to all.  To sustain this is cited *Jolly's Admr's. v. Society*, 1 Har. & Gill, 295 (18 Am. Dec. 288); *Burritt v. Saratoga M. F. Ins Co.*, 5 Hill, 192 (40 Am. Dec. 345).

The same doctrine was announced in *Wash. Mills Emery Mfg. Co. v. Weymouth and Braintree Mutual Fire Ins. Co.*, 135 Mass. 503, where the court in the course of its argument said:

"The plaintiff made no misrepresentations and no concealment as to its title.  The policy is upon the buildings.  The defendant saw fit to issue this policy without any specific inquiries of the plaintiff as to the title to the land, and without any representations by

the plaintiff upon this point.    It was its own careless-
ness, and it cannot avoid the policy without proving
intentional misrepresentation or concealment on the
part of the plaintiff.    An innocent failure to commu-
nicate facts about which the plaintiff was not asked
will not have this effect;"   citing many prior Massa-
chusetts cases.

A great many other cases might be cited to sustain
this doctrine.    It is true that the cases are not entirely
uniform on this proposition, but we think the great
weight of authority and the better reasoning sustains
the appellant's contention.

So far as the question of notice of proof was con-
cerned, the testimony was overwhelming that the
company had disclaimed responsibility for the loss.
Under such circumstances no proof was necessary.

The judgment will be reversed with instructions to
overrule the motion for a non-suit.

HOYT, C. J., and SCOTT, GORDON and ANDERS, JJ.,
concur.