GEORGIA HOME INSURANCE COMPANY v. DAVID B. HOLMES.

1. PLEADING AND PRACTICE. *Foreign corporation.*

It is not essential that a declaration against, and summons for, a foreign corporation, should show that a certain named person was its agent to receive service of process. *Continental Ins. Co.* v. *Mansfield*, 45 Miss., 311, condemned.

2. SAME. *Insurance. Foreign companies. Code* 1857, *art.* 57, pp. 303, 304.

The sole object of art. 57, pp. 303, 304, code of 1857, was to prescribe terms upon which foreign insurance companies would be permitted to do business in this state, and the rules of pleading and practice were unaffected by it. *Continental Ins. Co.* v. *Mansfield*, 45 Miss., 311, condemned.

3. SAME. ' *Writing filed with declaration. Code* 1892, § 676; *Ib.*, § 677.

Under code of 1892, §§ 676, 677, every writing filed with any pleading, as a part of it, thereby becomes a part of the pleading for all purposes of the action.

4. SAME. *Code* 1892, § 3433.

Under the provisions of code 1892, § 3433, in suits against insurance companies, process may be served on any agent of defendant. A like statute was not in force when *Continental Ins. Co.* v. *Mansfield*, 45 Miss., 311, arose and was decided.

5. FIRE INSURANCE. *Policy issued on insurer's knowledge without representations by insured. Anti-mortgage clause. Waiver.*

A fire insurance policy, issued by an insurance company on its own knowledge of the condition of the property, without representations by the insured, cannot be avoided because of a condition therein against existing incumbrances, even if there were a mortgage on the property at the time of the issuance of the policy, the insured being unaware of the anti-mortgage clause in the policy until after loss. In such case, the insurer waived the anti-mortgage clause of the policy.

FROM the circuit court of Scott county.
HON. A. G. MAYERS, Judge.

This was an action upon a fire insurance policy. The plaintiff, David B. Holmes, recovered judgment in the circuit court, and the defendant, the insurance company, appealed to the supreme court. The facts upon which the controverted questions arose are stated in the opinion of the court.

*Calhoon & Green*, for appellant.

1. The condition limiting the period for bringing suits to twelve months is valid. *Ohio* v. *Ins. Co.*, 65 Miss., 532. The courts of this state have no original jurisdiction of the persons of foreign insurance corporations; and the manner of acquiring jurisdiction of their persons, in suits *in personam*, is purely statutory. The code of 1892 provides the only mode for acquiring such jurisdiction, and this is by service on an agent, coupled with the consent or agreement that service on the agent shall be accepted as service of process on the company. It was held, in *Continental Ins. Co.* v. *Mansfield*, 45 Miss., 311, that a declaration which did not aver that the insurance company was a foreign corporation, and that it had an agent for the service of process in this state, giving his name, did not aver the necessary jurisdictional facts. The same legislation is repeated, after this interpretation, in the codes of 1880 and 1892. Therefore, the declaration, as filed, did not contain sufficient averments to give the courts jurisdiction of this defendant.

If the court has no jurisdiction of the suit commenced within the twelve months, it does not stop the running of this contractual bar. *Riddlebarger* v. *Ins. Co.*, 7 Wall., 386; *McIntyre* v. *Ins. Co.*, 52 Mich., 188. A writ issued without authority of law, as this original summons necessarily was, would be void and unamendable. *Smith* v. *Mixon*, 73 Miss., 581. The declaration named, legally, no defendant, and the summons could only issue according to the declaration, and, therefore, it could legally name no defendant. The summons must command the officer "to summon the defendant to appear," etc. Code 1892, § 3414. "There must be an effort to conform to the

law, to entitle to the claim of mere irregularity in process."
*Joiner* v. *Delta Bank*, 71 Miss., 385. Where the process is
void, and, on appeal, the cause is reversed, for that reason the
defendant will be held in court to plead. *Ib.* The venue of
this suit could be the county of Scott, where the loss occurred
(code 1892, § 652), but in such case "process may be sent to
any county to be served as directed by law." *Ib.* The process
here could have been served if it named the company's agent
in Hinds or Lauderdale counties, as under the act of 1894, p.
50, and code of 1892, § 2323, service could be had on the agents
of the company. But this was not done. "The Georgia Home
Insurance Company, a corporation doing business in this
state," was the defendant named, and it was sued as if a local
corporation. The Georgia corporation of that name was not
sued, nor was the name of an agent given in the declaration or
summons to Scott county. The sheriff could not create a de-
fendant to the writ by serving it on some one believed by him
to be an agent; his beliefs cannot supplant the statute. The
writ must be one authorized by law to be issued, and with the
purpose, in good faith, of its execution. *Seavy* v. *Bennett*,
64 Miss., 737; *Jackson* v. *Scanland*, 65 Miss., 487. A suit
requires a plaintiff and a defendant, and § 670, code 1892, re-
quires that summons shall be immediately issued for the de-
fendant, in order that a suit may be commenced. Here there
was certainly no summons issued for the defendant within the
twelve months prescribed by the policy.

2. The plea alleged the mortgage condition, and the exist-
ence of the mortgage, without consent. If the replication is
analyzed, we find defendant seeking to make an appli-
cation in writing for the purpose of disclosing the incum-
brances, and averring ignorance that there was any condi-
tion against incumbrances. If plaintiff was ignorant of the
incumbrance clause, and, therefore, it was not a matter mate-
rial to the issuance of the policy, so far as he was concerned,
whether there were incumbrances or not, it is difficult to per-

ceive how the company could be said to have caused plaintiff to omit to do that which he did not intend to do. "Where it appears that the insured was not misled, all idea of waiver is excluded. That insured claims to have been misled, signified little, and is not the criterion by which to determine the question, which is, was what occurred and is relied on as a waiver, sufficient to lead the average man into the belief that he was relieved from the obligation to do more than he did? *McPike* v. *Assurance Co.*, 61 Miss., 37. Doubtless in every case of failure to make proof, or do anything required of him after a loss, the insured might truly claim to be misled, but he may have misled himself or neglected to do what he should from considerations quite independent of anything said by the insurer or its agents. . . . Waiver which rests upon the idea of estoppel cannot be predicated of mere performance of duty or exercise of right," etc. *N. O. Ins. Asso.* v. *Matthews*, 65 Miss., 313, 314.

"All of the following elements must be present in order to an estoppel by conduct: (1) There must have been a representation or concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; (5) the other party must have been induced to act upon it. And in this summary all the authorities concur." *Turnipseed* v. *Hudson*, 50 Miss., 436.

Knowledge of the property and knowledge of the legal title to the property are very different things. Knowledge of the property would be necessary in order to describe it in the policy, rate it properly, etc., but to know all about property does not mean knowledge of incumbrances on it.

*McWillie & Thompson*, for appellee.

1. The point made by appellant's attorneys, predicated of the manner of the institution of the suit, the issuance and serv-

ice of process, and defendant's appearance, seems to us to be wholly without merit. It ignores the difference between the questions which are presented by a record of a judgment by default, and one showing a judgment, after the appearance of the defendant, on the merits of the case. The matters discussed on the first assignment of errors are as irrelevant to the real controversy, it seems to us, as would be a brief on the regularity of the service of the summons in a case where defendant had appeared and pleaded to the action. We say it with all due respect, but the logic of appellant's contention leads to the absurd conclusion that the Georgia Home Insurance Company sued itself. It is not denied that it was sued; it is admitted that a suit was pending against it when it filed its pleas; but the effort is to maintain that everything done by the plaintiff, before the pleas were filed, was absolutely void, and had no legal effect whatever.

Section 670, code of 1892, provides " . . . an action shall, for all purposes, be considered to be commenced and to be pending from the time of the filing of the declaration, if a summons shall be issued thereon for the defendant." The circuit court of Scott county had jurisdiction of the subject-matter of the suit; the declaration was properly filed there; a summons was regularly issued; if the sheriff had found an agent of the defendant, even casually passing through the county, and the writ had been served on him, the proceedings would have been above criticism. See §§ 3433 and 652, code of 1892, the one section authorizing suits against insurance companies wherever a loss occurs, and the other the service of summons on any agent. It follows that the suit was instituted in good faith, and rightfully, in Scott county, and the good faith of the issuance of the first summons is not negatived by the plea, as it would have to be certainly before merit can be reasonably claimed for it.

In reference to the case cited, *Continental Insurance Com-*

*pany* v. *Mansfield*, 45 Miss., 311, by appellant's attorneys, we have to say that the matter before the court there was the validity of a judgment by default; here there was an appearance; and at the time of that decision, the code of 1857 was the law of the case, and it contained no such statutes as §§ 3433 and 652, code 1892.   It seems to us perfectly idle to say that the declaration, after the defendant appeared and pleaded to it, was defective for want of an averment that appellant was a foreign corporation.   Such an averment, if process had been served under the statute found in code of 1857, might be of consequence to maintain a judgment by default, but not if a defendant appeared; and we do not hesitate to advance the view that under our present statutes such an averment would be unnecessary, even to maintain a default judgment.

*Kelly* v. *Harrison*, 69 Miss., 856, is conclusive, we think, against appellant, as to when the suit was begun.   Mere irregularities in the summons did not prevent the suit from being begun; the writ was perfectly regular.   There is a substantial difference between the commencement of an action, and its being a pending suit between the parties; the first has reference only to the act of the plaintiff, but the second has reference, also, to the position of the defendant.   *Allen* v. *Mandaville*, 26 Miss., 397.

2. The next point to be considered arises on the decision of the court below overruling appellant's demurrer to the replication to the third plea.   The third plea set up the existence of a deed of trust on the insured house; the replication, stripped of all extraneous matter, in short, is:   Plaintiff asked the insurance company for a blank application, that he might formally apply for the policy; the insurance company responded, "You need make no other application; we know all about the property," and thereupon executed the policy.   The plaintiff did not know of the anti-mortgage clause until after the fire; supposed he had valid insurance, and paid the premiums on the

faith thereof. Can the insurance company repudiate the contract? We think not. One thing is certain, if the policy sued on is void because of the anti-mortgage clause, under the facts of this case, then it was never in force at all, never from the beginning had any validity whatever. If this be so, then the insurance company negotiated with plaintiff for insurance, professing to know all about the property, waived any communication from Holmes on the subject, pretended to insure him, and received the premium, but delivered him a policy which was void the instant it was issued, and the appellant assumed no liability whatever; delivered a policy which in no manner effected the purpose which appellant pretended and led Holmes to believe it would effect, and by such pretenses obtained Holmes' money. If appellant's contention be correct, only one condition of the policy was ever in force, and that was the *felo de se* clause, providing that, inasmuch as a part of the property, which appellant intended to insure, was mortgaged—a fact which existed but had not been made a condition of the agreement as negotiated—the policy was entirely void. If this interpretation is the proper one to be upheld by the court, its result is that Holmes negotiated for insurance on his property, making no false statements concerning it; the appellant undertook and assumed to place the risk upon it for a valuable consideration, and received Holmes' money for a paper which provided that he had no insurance—a result not according to the negotiations —because no inquiry was made as to a mortgage, and no mention was made that the company would not take a risk on mortgaged property. To construe this policy as void would be to impute turpitude to the conduct of appellant; it would be assuming that appellant attempted to, and did, obtain Holmes' money under unscrupulous business methods, if not by false pretenses. It must be assumed that the provisions of the policy were known to appellant, and in this case they were, according to the replication, unknown to Holmes; and the only way in which it is

pretended that the insurance company made known its provisions to Holmes was by delivering to him a void policy. If the policy is void for one purpose, it is void for all purposes; if it was not valid insurance when delivered, it can have no effect to charge notice on Holmes, and appellant's position is contradictory. It insists that the policy was good enough to charge Holmes with notice and to procure his money, but is utterly invalid to bind the company in any way. Appellant's attempted construction implies a scheme to obtain the premiums, and issue no insurance, and on the one hand, if no loss occurred, the premiums would be acquired without the assumption of risk; if, on the other hand, a loss occurred, the policy would be repudiated and liability escaped, but the premiums pocketed all the same. Of course, the scheme further involved the misleading of Holmes into the belief that he had insurance when he had none. Such cannot be the true construction. The appellant, by writing the insurance without inquiry as to mortgages thereon, consented to take the risk, with the mortgage on the property, as effectually as if consent thereto had been a part of the policy. But it is said by opposing counsel that the declaration of the insurance agent, that "we know all about the property," cannot refer to the state of the title. To this we answer, it makes no difference what the agent had in mind when he used the expression, because he stated also, at least his act in sending the policy demonstrated, that no other application was necessary, and he thereby fully waived all communications from Holmes about the property. But it is untrue that the words, "We know all about the property," when used in reference to insurance, do not relate to the state of the title. The property is never insured; it is simply the subject of insurance, and the owner, or contracting person, is insured; he is insured or indemnified against loss. When, therefore, an insurance company professes to know all about the property, its professions relate to an insurance contract, and they do cover the question of the quantum of

interest which the party proposed to be insured has in the property.

The following authorities maintain our position: *Wright* v. *Fire Insurance Co.*, 12 Mont., 474, s. c. 31 Pac. Rep., 87; *Philadelphia Tool Co.* v. *British Am. Assurance Co.*, 132 Penn. St., 236, s. c. 19 Am. St. Rep., 596; *German Mutual Ins. Co.* v. *Niewedde*, 11 Ind. App. Ct. Rep., 624, s. c. 39 N. E. Rep., 534; *Mascotte* v. *First Nat. Fire Ins. Co.* (Vt.), 37 Atl. Rep., 255; *Monotoe Ins. Co.* v. *Rodifer*, 92 Va., 747, s. c. 24 S. E. Rep., 393; *Ins. Co. of N. A.* v. *Bachler*, 62 N. W. Rep., 912, s. c. 44 Neb., 549; *Hanover, etc., Co.* v. *Bohn*, 67 N. W. Rep., 774.

Wood, in his work on Fire Insurance, sec. 162, p. 310, tells us: "When a policy is issued upon a verbal application, without any representations in reference thereto, all information relative to the risk, except such as is unusual and extraordinary, is waived." Certainly a mortgage on real estate is not unusual or extraordinary. Many other authorities might be cited. Mr. Freeman's syllabus to *Western & Atlantic Pipe Lines* v. *Homes Insurance Co.*, 27 Am. St. Rep., 703, announces: "Where an insurance policy is issued without any application or written request describing the interest of the insured in the property, and it does not appear that any actual representations of any kind were made by the assured, it will be presumed that the policy was written upon the knowledge of the insurer, and intended to cover, in good faith, the interest of the assured in the property," and this, too, is a case where the insurer did not say, "We know all about the property;" and a case in perfect analogy is *Lorillard Fire Ins. Co.* v. *McCulloch*, 21 Ohio St., 176, s. c. 8 Am. Rep., 52, a case where, in a written application, some of the inquiries were left unanswered, in which it was held that the issuance of the policy without answer to the questions was a waiver, etc.

We think, too, the last paragraph of the opinion of this court, delivered by one of our respected opposing counsel, as special

judge, in the case of *Am. Fire Ins. Co.* v. *First Nat. Bank*, 73 Miss., 469, is a very pertinent authority for appellee.   We cite, also, on the subject of waiver of the anti-mortgage clause in this case, *Liverpool & London & Globe Ins. Co.* v. *Sheffy*, 71 Miss., 919.

Argued orally by *S. S. Calhoon* and *Marcellus Green*, for appellant, and by *T. A. McWillie* and *R. H. Thompson*, for appellee.

WOODS, C. J., delivered the opinion of the court.

There are two serious questions presented by this appeal, and they are as follows:

1. Was this action begun within one year after the loss by fire of the assured property occurred?

2. Was the policy avoided by the anti-mortgage clause contained therein?

We consider them in the order named.   The loss is shown to have occurred on the 30th day of November, 1894, and the declaration was filed on October 8, 1895, and summons issued for the Georgia Home Insurance Company immediately, to Scott county, returnable to the next term of the court.   This process was not executed, as it appears, because no agent of the company was to be found in that county.   In June, 1896, a substituted declaration was filed, the original, as well as the original policy of insurance sued on, having been lost, as is shown by the affidavit of appellee's counsel, and alias summons for the Georgia Home Insurance Company, and Ross and Yerger, agents, was then sent to Hinds county, and returned executed on Ross and Yerger, agents, August 3, 1896.   On the 3d of August, 1896, an alias summons was sent to Lauderdale county, for the Georgia Home Insurance Company, and this summons was returned August 10, executed on I. I. Solomon, agent for the Georgia Home Insurance Company.

The company, by its counsel, appeared in court on Septem-

ber 21, 1896, and filed many pleas, and on March 15, 1897, the company's counsel withdrew its fifth plea, and filed, by leave, what is called the substituted fifth plea. This substituted fifth plea it is which raises the question of the limitation of the one year provision as to bringing suit.

By this substituted fifth plea, it is averred that the declaration named no defendant, failed to show that the defendant was a foreign insurance company, and did not state the names of the agents of this foreign company who were authorized to accept service of process. In a word, the plea avers an absence from the declaration of the facts necessary to confer jurisdiction upon the court in which it was filed, and sets up, also, the facts as to the summons already stated by us, and the further fact that when appellee's counsel were informed by the sheriff of Scott county that no agent of the company was in that county, they directed that officer to do nothing further with the writ until he should hear from them, and that nothing further was done with the writ.

Was it essential that the declaration and summons should have shown that the defendant was a foreign corporation, and that certain named persons were its designated agents to receive service of process?

In *Continental Insurance Company* v. *Mansfield*, 45 Miss., 311, this question appears to have been answered affirmatively. Certainly it is held in that case that the declaration must show these so-called jurisdictional facts, and it is said that it would have been well if the summons had followed the declaration in these particulars. We are not quite sure what the opinion of the court was. If it holds, as counsel for appellant in the case now before us thinks it does, that the declaration was no declaration, and that the summons was void, then the judgment in that case was most singular, for by it the suit is treated as a pending one, and "leave given the plaintiff to apply for liberty to amend." How could he amend a pleading which was a nullity? And how amend a summons which was void?

But, regarding the court as holding in that case that the declaration and summons must allege that the defendant is a foreign insurance company, and that certain named persons are the duly authorized agents of the company to receive service of summons, we feel constrained to declare the holding erroneous. It rests upon what seems to us a total misconception of the nature of the act which it was attempting to construe. The act was not one of pleading or practice. Its manifest object, its sole object, was to prescribe the terms and conditions upon which foreign insurance companies would be permitted to enter this state, and do business with our people, and all our rules of pleading and practice were left wholly unaffected by it. We refer to the case to condemn it, simply that it may not mislead further.

In addition, in the case before us, the original policy, which was filed with the declaration as part of it, and which is expressly made so by our statute, secs. 676, 677, code of 1892, plainly discloses on its face, that the defendant herein is a foreign corporation, to wit: a corporation under the laws of the state of Georgia.

Then, too, by section 3433, code of 1892, and the amendatory act of February 2, 1894, it is now distinctly provided that in suits against insurance companies, process may be served on any agent of the defendant. This provision as to service of process on insurance companies was not contained in the code of 1857, which was in force when *Continental Ins. Co.* v. *Mansfield* arose and was decided.

We see no reason for believing that the first summons to Scott county was not issued in good faith, and, under the views already announced, we are of opinion that the suit was instituted within one year after the loss occurred.

2. Was the policy avoided by the anti-mortgage clause contained therein?

The evidence shows that the appellee sent to the company's agent who issued the policy, requesting him to send a blank

form of application for insurance, and also to send a man to inspect the house on which the insurance was desired. The company's agent did neither, saying, in effect, that he knew the condition of the property. It now appears that this agent was mistaken in two important particulars. He made out a policy, without any written application having been made, or, indeed, any application other than that contained in what we have just stated, and sent it to Holmes. This agent, who knew about the property, made out the policy for a single story house, when, in fact, it was a two-story building, and he thought the property was free from incumbrance, perhaps, when, in fact, it was incumbered by a trust deed of record for $150. The first policy, which misdescribed the house, was replaced by another, correctly describing it, the policy sent appellee (who never read it until after the loss occurred, and who was in ignorance of the anti-mortgage clause until his attention was called to it by the company's agent when a settlement of the loss was sought), and the premium paid and accepted.

This is a case, then, in which no application—no formal application—was made, because the agent held it unnecessary, inasmuch as he knew about the condition of the property, and a case in which appellee did not know there was any anti-mortgage clause contained in the policy until after the loss, and the question is, whether the company shall now be permitted to repudiate its contract made, not upon any misrepresentations, or even representations, of the insured, but upon its own knowledge of the condition of the property. If this policy was issued upon the knowledge of the company as to the condition of the property, and after refusal to furnish the usual blank application, whereby the insured would have apprised the insurer of the true condition of the property, and not upon any representation of the insured, then the anti-mortgage clause must be held to have been waived. Any other view would involve the holding by us of this proposition: that the insurance company, waiving

any application by the person desiring insurance and issuing a policy upon its own knowledge of the condition of the property, may receive the premiums paid for the indemnity, and defeat a recovery for a loss sustained by inserting in the policy a provision invalidating the contract from the moment it was signed and delivered, thus inducing the insured to rest upon a contract which the company never intended to carry out. This cannot be sound law.

*Affirmed.*