# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## WESTCHESTER FIRE INSURANCE COMPANY V. J. G. AND MOLLIE W. ROSE.

November 17, 1932.

Present, Campbell, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*W. G. Werth* and *Wm. H. Werth,* for the plaintiff in error.

*L. M. Robinette* and *S. H. & Geo. C. Sutherland,* for the defendants in error.

EPES, J., delivered the opinion of the court.

This is an action of trespass on the case brought by J. G. and Mollie W. Rose against the Westchester Fire Insurance Company to recover on two fire insurance policies issued by the defendant to the plaintiffs.

The plaintiffs owned and occupied a dwelling house situated on the north side of the L. & N. Railroad, about one-fourth of a mile southwest of the railroad station at Caylor in Lee county. The house was within about one-eighth of a mile of the State highway leading to Caylor station, and could be seen plainly from the road.

This dwelling was constructed as the ordinary frame house is constructed, except that instead of being weatherboarded its exterior surface was a brick wall one brick thick; that is, it was what is commonly known as a brick-veneered building.

In 1925 or 1926 the plaintiffs applied to the Potomac Joint Stock Land Bank for a loan, offering as security therefor a deed of trust on the land on which this dwelling stood. A. L. Witt of Big Stone Gap, an insurance agent, received information that the plaintiffs had applied for such a loan, and instructed H. T. Richie, the cashier of the bank at Ewing, which is about three miles from Caylor, to solicit the plaintiffs for the insurance which he knew the land bank would require them to carry on the improvements on this property.

Richie saw J. C. Rose and asked him to give him the insurance on this dwelling, stating that he had a good rate on it. In the conversation he advised him to take out a policy for five years, as the premium on a five-year policy was the same as the aggregate premiums for four years where the policies were written for one-year terms.

Rose agreed to let Richie insure the building for $4,000 and the furniture therein for $1,000 for a term of five years at the rate quoted him by Richie, which was the rate applicable to a brick dwelling situated as was the Rose dwelling. Richie did not require him to make a written application, or ask him any question as to the nature of the construction of the house; nor did Rose make any representations as to the nature of its construction. Richie had seen the house from the road a number of times and had been to it once, and from his observations thought that it was a brick house and so reported to Witt. Upon this information Witt issued two policies on the property for the Union Insurance Society, for which he was a general agent. One of the policies was issued for $2,500 for the dwelling, this being the amount of insurance which the Potomac Joint Land Bank required the plaintiffs to carry to protect the loan made by it to them. To this policy Witt attached the standard mortgage clause and sent it to the land bank. The other policy was written for $1,500 on the dwelling and $1,000 on the furniture, and was sent by Witt to the plaintiffs. In both of these policies the building was described as a brick dwelling, and the premium paid by the plaintiffs was at the rate applicable to brick buildings, which was materially less than the rate applicable to brick-veneered buildings. Soon after these policies were issued Witt went to the Ross home to inspect the property on which he had issued these policies, but he found no one at home and did not get inside the house. From his inspection of the exterior he did not discover that the walls were not solid brick, but were brick veneered.

In the summer of 1929, the Union Insurance Society determined to withdraw from business in Virginia, and notified the plaintiffs that it was cancelling their policies, and requested them to turn in the policies. When the plaintiffs received this letter, J. G. Rose went to Richie and told him that he did not want to send in his policy as its term had not expired. Richie told him to send it to Witt, and that he

would see that he got new policies in the place of those which the Union Insurance Society was cancelling.

Rose sent the policy which was in his possession to Witt. The policies issued by the Union Insurance Society were cancelled, and without any further inquiry of or representations from the plaintiffs, Witt, who was also a general agent of the Westchester Fire Insurance Company, issued two policies of that company to the plaintiffs to take the place of the cancelled policies. These are the policies here sued upon.

Each of these policies is dated August 29, 1929; is for a two-year term; states on its face that the premium rate upon which it is issued is forty cents on the $100; carries the three-fourths value clause, and describes the building insured as a "two story brick building with metal roof, occupied by assured as a dwelling house * * * situate on the north side of L. & N. Railroad, in Caylor, Lee county, Va., about one-fourth of a mile southwest from railroad station." One of the policies is for $2,500 on the dwelling alone. To this policy Witt attached the standard mortgage clause, and sent it to the Potomac Joint State Land Bank; and the plaintiffs never saw this policy until after the fire. The other is for $1,500 on the dwelling and $1,000 on the furniture, and was delivered by Witt to the plaintiffs in whose possession it remained.

There is a material difference in the fire hazard of a brick dwelling and that of a brick-veneered house. The premium rate on a brick dwelling and furniture therein is forty cents on the $100, while the rate on a brick-veneered dwelling and its contents is sixty-four cents.

There is no question that the dwelling which is described in the policies is the building which both Witt and the plaintiffs intended should be insured under these policies, but there is a misdescription of the character of its construction in a particular which was very material to the risk and the premium rate applicable.

This dwelling and the furniture therein were totally destroyed by fire on July 31, 1930. The evidence shows that the amount of insurance on the building was less than three-fourths of the value of the dwelling, and the amount of insurance on the furniture was less than three-fourths of the value thereof.

The plaintiffs asked the court to instruct the jury that the fact that the dwelling insured was described in these policies as a "brick dwelling" instead of as a "brick-veneered dwelling" did not render the policies void, but only entitled the defendant company to a credit for the difference between the amount of the premium paid and the amount of the premium which should have been paid due to the fact that the building was a brick-veneered and not a brick building.

The defendant asked the court to instruct the jury that the fact that the dwelling insured was described in the policies as a "brick" building, when it was a "brick-veneered" building, rendered the policies void *ab initio*, and that, therefore, the plaintiffs were not entitled to recover anything.

The court refused to give any of the instructions asked for by either party, but gave an instruction of its own, which reads:

"The court instructs the jury that, if they believe from a preponderance of the evidence in this case, the dwelling house and the furniture therein contained are covered by the policies, filed and introduced as evidence in this case, and that the dwelling-house and its contents were destroyed by fire on July 31, 1930, and if the jury further believe from the evidence that the rate of insurance should have been sixty-four cents on the one hundred dollars and not forty cents, then the jury should find for the plaintiffs and assess their damages at such sum as the premium paid at the rate of forty cents would have paid for at the correct rate of sixty-four cents, and in assessing their damages the

jury will base the amount on three-fourths of the value of the property as ascertained at the time of the fire."

The plaintiffs excepted to the action of the court in refusing to give the instructions asked for by them. The defendant excepted both to the action of the court in refusing to give the instructions asked for by it, and to the instruction given by the court.

The jury returned a verdict for the plaintiffs for $2,500 on the dwelling and $625 on the furniture, a total of $3,125. The defendant moved the court to set aside the verdict because the jury had been erroneously instructed, and to enter final judgment for it.

The court overruled this motion and entered judgment upon the verdict, to which action the defendant, but not the plaintiffs, excepted.

To this judgment Westchester Fire Insurance Company has applied for and been granted a writ of error. Its assignments of error may be combined and briefly stated thus: The court erred in not holding and in not instructing the jury that the policies sued upon were rendered void *ab initio* by the fact that the dwelling insured was described as a brick building when it was a brick-veneered building. It prays that the judgment of the court be reversed and final judgment here entered for it.

On the other hand, the defendants in error admit that the instruction given by the court was erroneous, but assign as cross-error the failure of the court to instruct the jury as requested by them. They pray that the judgment of the court be reversed and final judgment be here entered for them for the full amount of their policies, less a credit of $12.00, the difference between the premium paid by them and the premium which should have been paid in view of the fact that the building was of brick-veneer construction.

█ The instruction given by the court is plainly erroneous. The effect of it was to make a new contract for the parties. This the court was without authority to do.

*Maryland Casualty Co.* v. *Cole,* 156 Va. 707, 718, 158 S. E. 873.

■ The contention of the plaintiff in error that the description of the dwelling as a brick dwelling, when it was in fact a brick-veneered building, constituted a concealment or misrepresentation of a material fact or circumstance by the insured, or a fraud or false swearing on their part, is not well taken. No application was required of or questions asked the insured. Nothing was said or done by the plaintiffs to in any way induce the agent of the insurer to believe that the dwelling was of brick and not brick-veneered, and nothing was at any time said or done by the insurer or brought home to the insured which imposed upon them any duty to disclose to the insurer or its agent that a mistake had been made. The record wholly fails to show that the plaintiffs, even if they read the policies and noticed this misdescription, had any knowledge or notice that they were or might be deriving any benefit from the fact that the insurer, or its agent, thought the building was a brick building and not merely brick-veneered. There is nothing in the record which suggests that the insured in this case in any way acted in bad faith. The agent of the insurer assumed that he knew the character of the construction of the building, and acted upon his own knowledge. Having done so the insurer is estopped from asserting that the policies have been rendered void by a misdescription for which it alone is responsible. *Westchester Fire Ins. Co.* v. *Ocean View, etc., Co.,* 106 Va. 633, 56 S. E. 584; *Union Assur. Society* v. *Nalls,* 101 Va. 613, 44 S. E. 896, 99 Am. St. Rep. 923; *Connecticut F. Ins. Co.* v. *Colo. Leasing, etc., Co.,* 50 Colo. 424, 116 Pac. 154, Ann. Cas. 1912C, 597; 14 R. C. L. 1025; Woods on Ins. section 388; *Washington Mills Emery Mfg. Co.* v. *Weymouth & B. Mut. F. Ins. Co.,* 135 Mass. 503; 16 L. R. A. (N. S.) note page 1243.

■ The contention of the plaintiff in error that there was a lack of "mutuality of agreement or consideration" is

likewise unfounded. Both the insurer and the insured intended that this particular building should be insured. The mistake in the description of the character of the construction was the mistake of the insurer, to which the insured in no way contributed. It is true that as a result of its mistake the insurer exacted a smaller premium than it would have exacted except for this mistake, and a smaller premium than it was required by law to charge for the assumption of this risk; but this fact did not operate to render the contract void for want of "mutuality of agreement or consideration." Under the existing statutes of Virginia relating to fire insurance rates the insurer, when it discovered this mistake, had the right to demand the payment of the proper legal rate, and it was its duty to do so; but this was the limit of its right arising out of this mistake. *North River Ins. Co.* v. *Lewis,* 137 Va. 322, 119 S. E. 43; *West Rockingham Mut. Fire Ins. Co.* v. *Sheets,* 26 Gratt. (67 Va.) 854; *Yoch* v. *Home Mut. Ins. Co.,* 111 Cal. 503, 44 Pac. 189, 34 L. R. A. 857; *Wright* v. *Fire Ins. Co.,* 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211; *Dooly* v. *Hanover Fire Ins. Co.,* 16 Wash. 155, 47 Pac. 507, 58 Am. St. Rep. 26; *Georgia Home Ins. Co.* v. *Holmes,* 75 Miss. 390, 23 So. 183, 65 Am. St. Rep. 611; *Aetna, etc., Ins. Co.* v. *Olmstead,* 21 Mich. 252, 4 Am. Rep. 483.

For the reasons stated the judgment of the trial court must be reversed. As to so much of the recovery sought as is based upon the policy of $1,500 on the house and $1,000 on the household and kitchen furniture, it is plain that judgment should be entered for the defendants in error. As to the recovery sought on the policy of $2,500 on the house, which was endorsed payable to the Potomac Joint Stock Land Bank of Alexandria, Virginia, mortgagee, as its interests shall appear, the question of what judgment should be entered is more difficult. The Potomac Joint Stock Land Bank is not a party to this action, and it is questionable whether properly it could have been joined in a common

law proceeding. The propriety of a court of law entering a conditional judgment is also involved. However, none of these questions has been raised either in the trial court or in this court by the parties. The case was apparently proceeded with in the trial court upon the assumption by all parties that in case of a recovery by the defendants in error a conditional judgment could be entered in their favor, providing that the amount recovered under the assigned policy should be paid to the Potomac Joint Stock Land Bank as its interests should appear. The trial court entered such a conditional judgment, and no exception was taken to such provision in the judgment. In view of these facts we shall treat the case as being here upon the consent of the parties, that any judgment entered in favor of the defendants in error shall be entered upon such condition.

Accordingly, judgment will be here entered in favor of J. C. and Mollie W. Rose against the Westchester Fire Insurance Company for the full amount of both policies ($5,000), subject to a credit of $12.00; and the judgment will provide that $2,500 thereof shall be payable jointly to J. C. Rose and Mollie W. Rose and Potomac Joint Stock Land Bank of Alexandria, Virginia, to be applied according to their respective rights under the provisions of the mortgage or deed of trust executed by J. C. Rose and Mollie W. Rose to secure the payment of the debt due by them to said bank, but without obligation upon the plaintiff in error to see to the application thereof.

*Reversed.*