## GLENS FALLS INSURANCE COMPANY *v.* MICHAEL ET AL.

[No. 20,432. Filed June 8, 1905. Dissenting opinion filed June 28, 1905. Rehearing denied January 17, 1907.]

1. INSURANCE.—*Marine.—Disclosures.*—It is the duty of the insured, in a marine policy, to disclose to his insurer all facts within his knowledge which would tend to increase the hazard, and a failure so to do ordinarily avoids such policy. p. 665.

2. SAME.—*Fire.—Disclosures.*—It is not the duty of assured, in a fire policy, to make disclosures as to the risk, there being no fraud practiced, since the insurer may examine the property insured and can make and verify inquiries in reference to such risk. p. 666.

3. SAME.—*Policies.—Construction.—Contracts.*—Insurance policies which contain inconsistent provisions, or which are so framed as to be fairly open to construction, will be construed so as to sustain, rather than defeat, the insurance. p. 666.

4. SAME.—*Fire Policies.—Void Clauses.—Representations.*—In the absence of fraud, a fire policy which provides that it "shall be void if the insured has concealed * * * any material fact; * * * or if the interest of the insured in the property be not truly stated herein," or "if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple," is not void, although assured had a life estate

only, no representations having been made by assured to the insurer and no questions being asked by such insurer. Anything to the contrary in *Geiss* v. *Franklin Ins. Co.*, 123 Ind. 172, disapproved. Gillett, J., dissenting. pp. 666, 699, 705.

5. INSURANCE.—*Policies.—Construction.—Inequality of Parties.* —Insurance policies prepared by experts with a view of safeguarding the insurer at all points, and with the execution and provisions of which the assured had nothing to do, and the import of many of the provisions of which he cannot fully comprehend, should not be construed and enforced as contracts where the parties deal on an equal footing with each other. p. 677.

6. SAME.—*Policies.—Mutuality of Contracts.*—The meeting of the minds of the parties, essential to the ordinary contract, is usually wanting in fact as to many of the provisions in insurance policies, the assured's assent thereto being largely a legal fiction. pp. 677, 704.

7. SAME.—*Fire.—Insurable Interest.—Life Tenants.*—Life tenants have an insurable interest in the house situate upon their land. p. 677.

8. SAME.—*Policies.—Validity.—Presumptions.*—Where the insurer issues a fire policy to life tenants, and they pay the premium and the insurer accepts and retains same, the presumption is that the parties in good faith intended to effect a valid contract. p. 677.

9. SAME.—*Policies.—Title of Assured.—Failure to Inquire About.—Presumptions.*—Where the insurer issues a fire policy to life tenants without inquiring as to the title, the presumption is that the insurer is satisfied as to the condition of the title and voluntarily issues the policy regardless thereof. p. 678.

10. SAME.—*Policies.—Provisions Broken.—Waiver.*—A provision in a fire policy which is violated to the insurer's knowledge at the taking effect of such policy, is waived. p. 678.

11. SAME.—*Policies.—"Void" Clauses.—Voidable.*—The word "void" as used in clauses in an insurance policy means voidable at the election of the insurance company. p. 678.

12. SAME.—*Policies.—Void.—Effect.*—A void insurance policy is binding on nobody. p. 678.

13. SAME.—*Policies.—Voidable.—Avoidance of.—Election.*—An insurer, acting with reasonable diligence, has the right to avoid its policy for a condition broken, or it may elect to continue such policy in force, regardless thereof. p. 678.

14. SAME.—*Policies.—Breach of Condition.—Election.*—Where a fire policy provided that it should be void in case the assured

had other than a fee-simple title to the land on which the insured building stood, and the assured had a life estate only, it was the insurer's duty upon discovery of that fact to make its election whether it would avoid such policy or continue it in force. p. 679.

15. INSURANCE. — Policies.—Avoidance.—Election.—Notice.—Return of Premium.—Where an insurance company learns of a condition broken in its policy, it must, with reasonable promptness after learning of the breach, notify the assured of such avoidance and the reasons therefor and return to him the unearned premium. p. 679.

16. PLEADING. — Answer. — Insurance Policies. — Avoidance. — Election.—An answer in avoidance of an insurance policy, because of a condition broken, must set out such condition, a breach thereof by assured and the acts done by the insurer in pursuance of its election to avoid such policy. p. 679.

17. INSURANCE.—Policies.—Voidable.—Retention of Premium.— The retention of the premium paid for an insurance policy, with knowledge of a condition broken, is an election to treat such policy as valid and not to insist upon a forfeiture. p. 679.

18. PLEADING.—Insufficient Answer.—Reply.—Demurrer.—Carrying Back.—A demurrer to a reply will be carried back and sustained to an insufficient answer. p. 680.

19. APPEAL AND ERROR.—Stare Decisis.—Conflict.—Where the authorities on a question of law are conflicting, the Supreme Court will adopt the rule which seems the most fair, reasonable and just. p. 699.

20. INSURANCE.—Fire.—Life Tenants.—Measure of Loss.—The measure of loss suffered by life tenants in the destruction of their house, covered by a fire policy, is the value of the insured property when tested by such interest. p. 703.

21. SAME.—Conduct.—Notice.—Waiver.—An insurance company is chargeable with notice of its own conduct, and a waiver can be manifested by conduct as well as by words. p. 704.

22. SAME. — Voidable. — Premiums.—Recovery.—The premium paid for a voidable insurance policy cannot be recovered by the assured, the right of avoiding such policy resting solely with such company. p. 704.

From Cass Circuit Court; John S. Lairy, Judge.

Action by George W. Michael and another against the Glens Falls Insurance Company. From a judgment for plaintiffs, defendant appeals. Transferred from Appellate

Court under §1337u Burns 1901, Acts 1901, p. 590.  *Affirmed.*

*Royal J. Whitlock, Charles E. Yarlott* and *Chambers, Pickens, Moores & Davidson,* for appellant.

*Lairy & Mahoney* and *McConnell, Jenkines, Jenkines & Stuart,* for appellees.

MONTGOMERY; J.—This action was brought by appellees upon a policy of insurance against loss by fire.  The policy contained the following, among other provisions:

> "This entire policy shall be void if the insured has concealed, or misrepresented in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured, touching any matter relating to this insurance, or the subject thereof, whether before or after the loss; this entire policy, unless otherwise provided by agreement, indorsed hereon and added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

Appellant answered the complaint in six paragraphs, the first, second and sixth of which were afterwards, by agreement, withdrawn.  The third paragraph of answer alleged that "at the time said policy under which plaintiffs' claim was issued, and at the time of said loss and damage by fire, the interest of the plaintiffs in the buildings, additions, and appurtenances mentioned in said policy of insurance, and for loss and damage of which, by fire, the plaintiffs have brought this action, was not that of sole and unconditional ownership, and said building and its additions and appurtenances were not, at the time of the issuance of said policy, and were not at the time of said loss and damage by fire, on ground owned by the plaintiffs or either of them in fee simple; and therefore said policy of

insurance, so issued to them, was and is, by the provisions of the contract in the complaint mentioned and set out, void." The fourth paragraph alleged, in substance, that although it was not so provided by agreement indorsed on or added to the policy, yet the subject of insurance was, at the time of issuing the policy and of the fire, a building on ground not owned by assured in fee simple, but that at said times the plaintiffs' interest in said premises was that of life tenants only, and the fee was in other persons named. The fifth paragraph alleged that, although it was not so provided by agreement indorsed on or added to the policy, nevertheless, at the time of issuing said policy, and at the time of said fire, the interest of plaintiffs in the subject of insurance was not that of unconditional or sole ownership, but was that of life tenants only; the remainder in fee in and to the subject of insurance being at said times vested in other persons named.

Appellees replied to the third paragraph of answer herein set out, admitting that at the time of the issuance of the policy, and of the loss and damage by fire sued for, their interest in the buildings mentioned in the policy of insurance was not that of unconditional ownership, and that said buildings were not at the time on grounds owned by them or either of them in fee simple, but they averred "that no change had taken place in the condition of the title to said property, described in the policy sued on, since said policy was issued; that the plaintiffs were then and are now the owners of a life estate in said real estate, with the remainder in fee to Herbert S. Michael, George Michael, and Morris S. Michael, their children; that no written application was made by plaintiffs or either of them for the policy of insurance sued on, and no representations of any character as to the state of said title were made by these plaintiffs or either of them; that at no time before the issuing of said policy or since that time, up until the date of the loss, was anything concerning the state of said title

asked of said plaintiffs or either of them by the agent of the defendant who wrote said policy; that the attention of neither of the plaintiffs was called to the conditions in the policy sued on in reference to title, and plaintiffs had no knowledge of said condition in said policy, or that the defendant considered the state or condition of plaintiffs' title to the property insured material to the risk, or that anything in the condition of plaintiffs' title might or could work a forfeiture of said policy; that the defendant, without making any inquiry of plaintiffs concerning the condition of said title, issued said policy, and accepted and retained the premium therefor from the plaintiffs, and that said defendant never thereafter made any objection to the condition of said title until after the loss by fire had occurred; that the plaintiffs accepted said policy and paid the premium therefor in the full belief that the same was a valid and binding contract of insurance, covering the property described therein. Wherefore plaintiffs aver that the defendant has waived any defense to said policy by reason of the condition of said title, and they pray for judgment accordingly." Appellees' reply to the fourth paragraph and also to the fifth paragraph of answer was substantially the same as the reply to the third paragraph of answer, above set out.

Appellant demurred to each of the replies for want of sufficient facts.

It was thereupon agreed by the parties to this action, and the agreement made a matter of record, that all questions not presented by these pleadings should be waived, and the cause submitted to the court upon the issue of law presented by appellant's demurrer to each of the replies, and that, in case the court should hold the replies sufficient to avoid the several paragraphs of answer to which they were addressed, judgment was to be rendered in favor of appellees for $917.86, together with interest after March 1, 1903, and, in case the court should hold the replies in-

sufficient, judgment should be rendered in favor of appellant for costs. But nothing in the agreement was intended to preclude either party from appealing or otherwise obtaining a review of the decision of the circuit court in like manner as they might do without having entered into such stipulation. The court subsequently overruled appellant's demurrer to each of said paragraphs of reply, to which rulings the appellant duly excepted, and thereupon judgment was rendered in accordance with said agreement in favor of appellees for $932.40, together with costs. The assignment of errors calls in question the decision of the court on appellant's demurrer to each of said paragraphs of reply.

The contention of appellant is that appellees are bound by the strict terms of the policy with regard to title, and that it was their duty to make known, voluntarily, the exact state of the title to the grounds upon which the insured building stood, and to see that the same was correctly described, and that a failure to do so rendered the policy absolutely void. This contention is primarily founded upon a principle which prevails in marine insurance. The subject of marine insurance is often in distant ports or upon the high seas, and generally not open to the examination of the underwriter. The perils to which such property may be exposed are peculiarly numerous, hazardous, and difficult to anticipate by any reasonable inquiry, but are always known to the owner of the property. The underwriter is compelled, from necessity, to rely upon the assured, for a full disclosure of all facts known to him which may in any way affect the risk to be assumed. It is both reasonable and just, under such circumstances, that the assured should not only act with unquestioned good faith, but also make known every fact and circumstance within his knowledge which might increase the hazard of insurance, and, in case of failure so to do, liability upon the policy should be avoided.

It is apparent that there is a marked difference in this respect between the subjects of marine and fire insurance.

2. The subjects of fire insurance may almost always be seen and inspected, and, if the underwriter assumes the risk without taking the trouble either to examine or inquire about facts which may affect the hazard of insurance, he ought not to complain, in the absence of fraud, if the risk proves to be greater than he anticipated.

A pertinent general rule of law applicable to the construction of these contracts is, "that if policies of insurance contain inconsistent provisions, or are so framed as

3. to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract." *McMaster* v. *New York Life Ins. Co.* (1901), 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64. See, also, *Thompson* v. *Phenix Ins. Co.* (1890), 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; *First Nat. Bank* v. *Hartford Fire Ins. Co.* (1878), 95 U. S. 673, 24 L. Ed. 563.

The courts of many states have construed policies having provisions identical with or similar to those of the policy in suit. The importance of the principle involved,

4. and a desire that the reasoning and authority upon which our conclusion rests may more fully appear, have prompted us to quote extensively from these cases. In the case of *Morotock Ins. Co.* v. *Rodefer Bros.* (1896), 92 Va. 747, 24 S. E. 393, 53 Am. St. 848, the court pertinently said: "Applicants for insurance are not generally aware of the necessity of disclosures which long experience in the business of insurance has shown to underwriters to be necessary, or what disclosures it is important to make; while insurance companies cannot only protect themselves by making inquiries in regard to such things as they may regard to be material, but, as is well known, are in the habit of doing so. * * * If an insurance company elects to issue its policy without an application or any repre-

sentation in regard to the title to the property upon which the insurance is effected, the company cannot complain, after a loss has ensued, that the interest of the insured was not correctly stated in the policy, or that an existing encumbrance was not disclosed." The same court in the case of *Manhattan Fire Ins. Co.* v. *Weill & Ullman* (1877), 28 Gratt. (Va.) 389, 26 Am. Rep. 364, held that although it was provided in the policy that in case of any omission to make known every fact material to the risk, or if the interest of the assured in the property be not truly stated in the policy it should be void; yet, an omission to disclose, in the absence of any inquiry, an encumbrance in the form of a deed of trust subsisting on the property at the time the insurance was effected, did not vitiate the policy. In the case of *Philadelphia Tool Co.* v. *British, etc., Assur. Co.* (1890), 132 Pa. St. 236, 19 Atl. 77, 19 Am. St. 596, the court said, that the defense rested upon "one of the almost innumerable conditions, stipulations, and provisos which appear on the policy, and which asserts that if the assured is not the sole and unconditional owner of the property, or if the building stands on ground not owned in fee simple by the assured, or if the interest of the assured is not truly stated in the policy, then the policy shall be void." In discussing the defense thus asserted the court said: "Is this condition applicable to the case presented on this policy? A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it. This policy was issued without any application or written request describing the interest of the assured in the buildings. No actual representation of any sort upon the subject, oral or written, is alleged to have been made by or on behalf of the assured. We ought to assume that a policy written under such circumstances was written upon the knowledge of the representative of the insurer, and intended to cover in good faith the interest which the insured had in the buildings. Fraud is never to be presumed, and in this case no fraudulent representa-

tion is shown or alleged, unless it can be deduced from the statements of the insurer, made, as we must presume, on the knowledge of its representative, and for which the insured is in no manner responsible. We must also remember that this policy is to be interpreted most strongly against the company whose contract it is. ' Applying these principles to the question now raised, we conclude that the policy, written on the knowledge of the insurer, was made in view of the facts of the case, and was intended to cover such interest in the buildings as the insured had. This was a leasehold only, but it was an insurable interest. Presumably it is the interest which an application, if one had been made, would have shown, for it is the only interest which the tool company ever had or claimed to have. To such an interest, the proviso whose protection is invoked is not applicable."

From the case of *Western, etc., Pipe-Lines* v. *Home Ins. Co.* (1891), 145 Pa. St. 346, 22 Atl. 665, 27 Am. St. 703, we quote the following pertinent declarations: "It is not even pretended that there was any fraudulent concealment of ownership of the property, or that any untruthful representation was made, upon the faith of which the policy was issued; nor is it claimed that the defendant company was not fully aware of the exact situation and ownership of the oil when it accepted the risk. * * * The policy in suit was issued without any application or written request describing the interest of the insured in the oil, and it does not appear that any actual representation of any kind was made by the insured. * * * The defendant having insured the oil contained in tank No. 1, without any representation as to the *quantum* of plaintiff's interest therein, must be considered as having insured it as against any loss which the plaintiff would suffer by fire." In the case of *Short* v. *Home Ins. Co.* (1882), 90 N. Y. 16, 43 Am. Rep. 138, a somewhat similar question was involved, and upon that point the court said: "It is held that a

neglect on the part of the insured to make known the fact that a building is unoccupied is not a breach of a condition in the policy avoiding it in case of any omission to make known every fact material to the risk; that the applicant has a right to suppose that the insurer will make proper inquiries, and that in making inquiries as to material facts he considers all others as immaterial, or assumes to know or waives information in regard to them; that when he fails to inquire as to occupation, unless there is proof of concealment, it is not evidence of bad faith which will vitiate the policy, and that where no statement is made in the policy as to the occupation, it must be assumed that the insurance is made without regard to occupation." The case of *Hoose* v. *Prescott Ins. Co.* (1890), 84 Mich. 309, 47 N. W. 587, 11 L. R. A. 340, is aptly in point upon the subject under consideration. In that case the court said: "But the defendant relies upon the further provision contained under this head, to the effect that 'this entire policy, and every part thereof, shall become void unless consent in writing is indorsed by the company hereon in each of the following instances,' namely: (1) If the assured is not the sole and unconditional owner of the property. (2) If any building intended to be insured stands on ground not owned in fee simple by the assured. (3) If the interest of the assured in the property, whether as owner or otherwise, is not truly stated in the policy. (4) If any change take place in the title, interest, location, or possession of the property, by sale, transfer or conveyance, in whole or in part. In construing this portion of the policy, the whole must be taken together. Now, the object sought to be accomplished by the person applying for insurance was to obtain indemnity against loss by fire of her interest in the building. If the insurance company which made out this policy upon the verbal application to its agent had desired to know what interest it was insuring, it should have stated it in that part of the policy pertaining

to the risk. It was the intention of these parties to issue a valid and binding contract of insurance, valid and binding from the time of acceptance of the same by the assured, not that after it had been accepted by the assured then the assured should apply to the company and obtain its consent in writing indorsed on the policy, stating that the assured was not the sole and unconditional owner of the property, or stating that the building intended to be insured stood on ground not owned in fee simple by the assured, or stating by indorsement on the policy the interest which the assured had in the property covered by the insurance; and yet the language of this part of the policy is that the entire policy, and every part thereof, shall become void, that is, void in the future, unless such consent in writing is indorsed by the company in writing thereon. To give any reasonable force and effect to this clause of the policy, it can only be held to apply to such changes as arise after the policy has been delivered and accepted, in the ownership of the property, or, if a building stood upon leased ground, the ownership of the building, and it does not apply to an existing state or condition of the property at the time the policy was issued. It looks to the future for protection of the insurer, and not to the present, only in so far as the preceding portion of the policy is violated by a misstatement or concealment of any fact material to the risk. Construing this portion of the policy with the testimony in the case, and with the fact that the company issued the policy to Mrs. Hoose, without stating in the policy what her interest was, but insuring the building against loss by fire to an amount not exceeding the interest of the assured in the property, we think that it must be held that the defendant understood the condition of the title, and intended to insure whatever interest Mrs. Hoose had which was insurable, not exceeding the amount named in the policy. We do not think that it would carry out the intention of the parties, or be a fair and just construction of this instru-

ment, to hold that when it was issued and accepted by the assured, and the premium paid, it was void from that moment because it did not contain the indorsements required above." See, also, to the same effect, *Hall* v. *Niagara Fire Ins. Co.* (1892), 93 Mich. 184, 189, 53 N. W. 727, 18 L. R. A. 135, 32 Am. St. 497.

In *Miotke* v. *Milwaukee, etc., Ins. Co.* (1897), 113 Mich. 166, 71 N. W. 463, the court said: "The day has gone by in Michigan for successfully contending that the mere acceptance of a policy containing a condition like this makes it conclusive against the holder who accepts it in ignorance of the clause, and whose title does not conform to the strict letter of the condition." In the case of *Lycoming Fire Ins. Co.* v. *Jackson* (1876), 83 Ill. 302, 25 Am. Rep. 386, it is said in the syllabus: "The principal thing in an insurance is, that the assured has an insurable interest, and has acted in good faith. Under a statement that he is the owner, he is only bound to prove an insurable interest, which is such a title as, if there should .be a loss, without insurance, it would fall upon him." In *Manchester Fire Assur. Co.* v. *Abrams* (1898), 89 Fed. 932, 32 C. C. A. 426, Gilbert, circuit judge, speaking for the court, said of the contention that the assured, by accepting a policy of insurance containing the stipulation that the same shall be void if the ownership of the assured is not unconditional and sole, has falsely represented to the insurance company that his ownership is sole and unconditional: "But sound reason as well as the weight of authority inclines us to the view that where the assured has an insurable interest in the property, and in good faith applies for insurance upon the same, and makes no actual misrepresentation or concealment of his interest therein, and the insurance company refrains from making inquiry concerning his interest, and issues a policy to him, and accepts and retains his premium, the company must be presumed to have knowledge of the condition of his title, and to

assure the property with such knowledge." The same doctrine is declared in the case of *Morrison* v. *Tennessee, etc., Ins. Co.* (1853), 18 Mo. 262, 59 Am. Dec. 299, in the following words: "The rights of the insurer are sufficiently guarded,. by having it in his power to exact, by inquiry, a description of the interest of the applicant, and by the recovery being limited in case of. loss to the value of the interest proved on the trial. \* \* \* These views commend themselves to our judgment by their justness, and we are satisfied will effect more solid justice between the assured and the insurer than the contrary doctrine. \* \* \* The man without guile, who asks for insurance on his property, is not aware of the necessity of disclosures, which long experience in insurance offices has shown to the underwriter to be necessary, and to hold his policy void for not making disclosures of the importance of which he is not aware, would be gross injustice." The holding of the supreme court of Nebraska is to the same effect. We quote the following from the case of *Hanover Fire Ins. Co.* v. *Bohn* (1896), 48 Neb. 743, 67 N. W. 774, 58 Am. St. 719: "Where an application for fire insurance is oral, and no inquiries are made by the agent of the insurer as to the condition of the title to the property, and the insured says nothing about the existence of a mortgage thereon, but does not keep silent from any sinister motive or with the intention on his part to deceive or mislead the insurer, then the fact that when the policy was issued there existed a mortgage upon the insured property will not invalidate the policy, notwithstanding the fact that the policy provides that it should be void if there existed an incumbrance, by mortgage or otherwise, against the insured property. *Insurance Co., etc.,* v. *Bachler* [1895], 44 Neb. 549, 62 N. W. 911. But it is insisted that the policy sued upon was never in force because the Bohns at the date of its issuance were not the unconditional and sole owners of the insured property, and that the insured building was not

situated on ground to which the Bohns had a fee-simple title. This contention involves the assumption that the Bohns at the date of the issuance of the policy in suit had no insurable interest in the insured property. * * * It has already been stated * * * that no questions as to the title of the Bohns were ever propounded to them by the fire insurance companies or their agents; that neither of the Bohns ever made any representations to the fire insurance companies as to what title they had or held; that the Bohns were not actuated by any sinister motives whatever in not disclosing the nature of the interest they had in the insured property; that no fraud was attempted by any one, and that the failure of the Bohns in September, 1890, to disclose the exact nature of their interest in the insured property resulted either from their not thinking about it, or from the failure of the fire insurance companies to inquire about that interest. Under these facts we think the policy, notwithstanding its provisions, was in force even in favor of the Bohns at the time the loss sued for occurred." See, also, *Phenix Ins. Co.* v. *Fuller* (1898), 53 Neb. 811, 74 N. W. 269, 68 Am. St. 637, 40 L. R. A. 408.

In the case of *German Ins., etc., Inst.* v. *Kline* (1895), 44 Neb. 395, 62 N. W. 857, the court, upon this point, said: "The real contract of insurance is made before the policy is written, and the insured, by accepting the policy with such a condition as the one relied upon, cannot be deemed to have represented his title to be in fee simple, or not by leasehold. How can it be said that, under such circumstances, there has been either fraud, misrepresentation, or concealment on the part of the insured? He has represented nothing. He has not been asked to represent anything." In *Quarrier* v. *Peabody Ins. Co.* (1877), 10 W. Va. 507, 27 Am. Rep. 582, which was an action upon a policy providing that if the interest of the insured is not truly stated, or is other than the entire, unconditional, and

sole ownership, it must be so expressed in the policy, under penalty of forfeiture, it was held, that the policy was not, rendered void by the failure to disclose that at the time the policy was issued there was a deed of trust on the property insured, no inquiry having been made about the state of the title. To the same effect is *Queen Ins. Co.* v. *Kline* (1895), (Ky.), 32 S. W. 214.

The supreme court of Montana, in the case of *Wright* v. *Fire Ins. Co.* (1892), 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211, in a well-reasoned opinion, held that where an insurance company issued a policy on mortgaged property, without making inquiry as to whether the property was mortgaged, which fact was a matter of public record, and no representations touching the matter were made by the insured, who paid the premium and accepted the policy in ignorance of the fact that it contained a provision rendering it void if the property be or become mortgaged, unless consent in writing was indorsed by the company thereon, the company should be held by its action to have consented to take the risk on the mortgaged property, as effectually as if consent had been indorsed on the policy. In the case of *Georgia Home Ins. Co.* v. *Holmes* (1897), 75 Miss. 390, 23 South. 183, 65 Am. St. 611, it is said: "This is a case, then, in which no application—no formal application—was made, because the agent held it unnecessary, inasmuch as he knew about the condition of the property, and a case in which appellee did not know there was any anti-mortgage clause contained in the policy until after loss, and the question is whether the company shall now be permitted to repudiate its contract made, not upon any misrepresentations, or even representations, of the insured, but upon its own knowledge of the property. If this policy was issued upon the knowledge of the company as to the condition of the property, and after refusal to furnish the usual blank application, whereby the insured would have apprised the insurer of the true condition of the property, and not upon any representations of the insured, then the

anti-mortgage clause must be held to have been waived. Any other view would involve the holding by us of this proposition: That the insurance company, waiving any application by the person desiring insurance, and issuing a policy upon its own knowledge of the condition of the property, may receive the premiums paid for the indemnity, and defeat a recovery for a loss sustained by inserting in the policy a provision invalidating the contract from the moment it was signed and delivered, thus inducing the insured to rest upon a contract which the company never intended to carry out. This cannot be sound law." In *Sharp* v. *Scottish Union, etc., Ins. Co.* (1902), 136 Cal. 542, 69 Pac. 253, 615, it is held that where there was no fraud, false swearing, concealment, or misrepresentation by the applicant for a policy of fire insurance which made the loss payable to a mortgagee, and where the assured person had an insurable interest in the property, though his wife was the owner of an undivided half interest therein, the policy may be enforced by the mortgagee, notwithstanding a clause that if the interest of the insured be other than unconditional and sole ownership the policy shall be void, and that in such case the company must be presumed to have issued the policy with knowledge of the condition of the title, which was not inquired into, and to have assured the property with such knowledge, and to have waived all inconsistent provisions. In the case of *Dooly* v. *Hanover Fire Ins. Co.* (1896), 16 Wash. 155, 47 Pac. 507, 58 Am. St. 26, the provisions of the policy were the same as those now under consideration, and were pleaded in defense of the action. In disposing of them the court said: "There having been no written application in which questions were asked and answered concerning the status of the property, we think, under the authorities and as a question of right, that this condition which is injected into the policy, among numerous other conditions more or less technical and hard to understand by the ordinary mind,

ought not to prevent a recovery, in the absence of any misrepresentation on the part of the insured. The insured, as a matter of fact, ordinarily knows nothing about the policy until it is made out and returned to him after the payments for the same have been made to the agent at the time the contract was made, and the insurer, having failed to obtain this information, must be held to have done so at his peril." In *Lancaster Ins. Co.* v. *Monroe* (1897), 19 Ky. Law 204, 39 S. W. 434, it is said: "The case here, therefore, is one where, without inquiry as to any mortgage, the company accepts the money of the insured, prepares its own policy and issues it. It seems to us that the insured has the right to assume that the company has made inquiries of him, touching every material fact affecting the risk, and if he does not scrutinize the multitude of conditions and stipulations with which he finds his policy shingled over he only risks the avoidance of his policy if it turns out that he has failed to disclose what is in fact material and what he ought to have known to be material to the risk assumed by the company. We think this is the effect of the later decisions of this court, as is certainly the trend of the authorities generally." *Hartford Fire Ins. Co.* v. *McClain* (1905), (Ky.), 85 S. W. 699. See, also, 1 Wood, Insurance (2d ed.), §212, p. 517; 1 May, Insurance (4th ed.), §207; *Vankirk* v. *Citizens Ins. Co.* (1891), 79 Wis. 627, 48 N. W. 798. In *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624, the court said: "The weight of authority and the strong equities of the case lead us to hold that where there is no written application, no questions asked, no statements made and no knowledge by the assured that the existence of the mortgage was fatal to his insurance, the company must be deemed to have waived the provisions for forfeiture by reason of the existing incumbrance."

These quotations express the doctrine which meets our approval, and indicate the correct construction of the pol-

icy in suit. We cannot with any regard for justice,
5. strictly apply to this class of written instruments
the rule for the interpretation of written contracts
generally. The making of contracts is generally preceded
by some negotiations, culminating in a meeting of the
minds upon terms, mutually agreeable and understood,
which are then reduced to writing, and the agreement
formally executed. Insurance policies are prepared in
advance by insurance and legal experts, having in view
primarily the safeguarding of the interests of the insurer
against every possible contingency. The insurer not only
fully knows the contents of the writing, but also adequately
comprehends its legal effect. The insured has no voice in
fixing or framing the terms of his policy, but must accept
it as prepared and tendered, usually without any knowl-
edge of its contents, and often without ability to compre-
hend the legal significance of its provisions. The meeting
of the minds ordinarily deemed essential to a valid
6. contract, as to many of its terms and conditions, is
wanting in fact, and a mere fiction of law.

In this case appellees were not the owners of a fee-
simple title to the real estate on which the insured build-
ings stood, but owned only a life estate therein.
7. They had an insurable interest in the property at
the time the policy was issued and at the time of the
loss by fire. They desired, in good faith, to obtain insur-
ance upon their interest in the property, and were guilty
of no misrepresentation, concealment, or fraud. They
were ignorant of the invalidating provisions of the policy,
and of the materiality of their exact title to the risk as-
sumed. No change was subsequently made in the title
held, nor was any act done increasing the risk of insurance.
It is not suggested that the value of their title was
8. not equal to the amount of insurance carried, nor
that the fire would not have occurred just as it did,
had their title been an unconditional fee simple. They

paid the premium charges, which appellant accepted and retains, and honestly rested in the belief that they had valid insurance. We must assume that both parties in good faith intended to effect a valid contract, and, if reasonably possible, so construe the policy as to make it effective. The appellant did not require of appellees a written application for insurance, or ask of them any questions concerning the property to be insured, or concerning their title to the same. We must therefore presume that appellant or its agent had satisfactory knowledge of the condition and surroundings of the property, and of the title to the same as then existing. Knowledge of the true state of the title on the part of the insurer being, under the circumstances shown, presumed by law, the provisions of the policy with respect to title pleaded in the answers were waived. It follows that the policy was valid, at least to the extent of the interest of the insured, and that the facts set out in each paragraph of reply were sufficient to avoid the paragraph of answer to which the same was addressed.

The same result is obtained, and the replies upheld by another course of reasoning. In our opinion the word "void" is used in the policy in the sense of voidable. *Hunt* v. *State Ins. Co.* (1902), 66 Neb. 121, 92 N. W. 921, and cases cited.

If a title to the property insured, other than a sole and unconditional fee simple in the insured, *ipso facto,* rendered the policy void, then it was void as to both parties. It will scarcely be insisted by any one that the insured, at their option, might have treated the policy as void, and recovered the premium paid, prior to the fire; but the evident meaning of the policy was that, for a breach of its terms, the insurer, acting with reasonable diligence, at its option might avoid the contract. If appellant could elect to avoid the policy for any reason, it is equally clear that in a case like

this, where the insured had an insurable interest, it could elect not to do so, and treat the policy as valid. If the stipulations with regard to title made the contract voidable only, then, upon discovery of the true condition of the title, whether before or after the loss, the insurer was required to make its election either to regard the contract as valid or void. A court cannot by its fiat alone render a voidable contract void, but it can only adjudge that the party entitled to avoid it has done so, and that it thereby and for that reason became invalid. If appellant desired to avoid this policy for the reasons pleaded, it was required to act with reasonable promptness after acquiring knowledge of the facts, and thereupon it was its duty to notify appellee of its decision to avoid the policy and of the reasons therefor, and to return, or tender, or in some appropriate way manifest its willingness and readiness to restore, the unearned premium received. The answers filed do not disclose the time when appellant learned the true state of appellees' title, nor deny knowledge of the same at the time of issuing the policy, but proceed upon the theory that the policy was void *ab initio,* and without any action on the part of the insurer. This theory was wrong, and the averment of facts insufficient. The answers should have pleaded the covenants or conditions relied upon, a breach, and the acts done by appellant in pursuance of its election to avoid the contract.

Appellant's contention is that, under the terms of the policy, no risk attached and no liability was assumed by it at any time. It must therefore follow that there was no consideration for the premium received, and good faith and common fairness required its prompt return; and the insurer, by retaining such premium with full knowledge of the facts, elected not to insist upon a forfeiture of the policy. *Hanover Fire Ins. Co.* v. *Bohn* (1896), 48 Neb. 743, 67 N. W. 774, 58 Am. St. 719;

Glens Falls Ins. Co. v. Michael—167 Ind. 659.

*Queen Ins. Co.* v. *Young* (1888), 86 Ala. 424, 5 South. 116, 11 Am. St. 51; *German Ins. Co.* v. *Shader* (1903), 68 Neb. 1, 93 N. W. 972, 60 L. R. A. 918; *Fraser* v. *Aetna Life Ins. Co.* (1902), 114 Wis. 510, 524, 90 N. W. 476; *Sharp* v. *Scottish Union, etc., Ins. Co.* (1902), 136 Cal. 542, 69 Pac. 253, 254; *Pearlstine* v. *Westchester Fire Ins. Co.* (1904), 70 S. C. 75, 49 S. E. 4; *Harris* v. *Equitable Life Assur. Soc.* (1876), 64 N. Y. 196; *Slobodisky* v. *Phenix Ins. Co.* (1898), 53 Neb. 816, 74 N. W. 270; *McQuillan* v. *Mutual, etc., Life Assn.* (1902), 112 Wis. 665, 87 N. W. 1069, 56 L. R. A. 233, 88 Am. St. 986; *Schreiber* v. *German-American, etc., Ins. Co.* (1890), 43 Minn. 367, 45 N. W. 708; *Union Cent. Life Ins. Co.* v. *Jones* (1897), 17 Ind. App. 592.

We are of the opinion, for the reasons indicated, that the answers were insufficient, and that appellant's demurrers to the several paragraphs of reply should have been carried back and sustained to the answers.

No reversible error being shown, the judgment is affirmed.

Gillett, J., dissents.

## DISSENTING OPINION.

GILLETT, J.—Impressed as I am with the view that my brethren err in disregarding the condition as to ownership and title which is found in the policy in suit, the task is devolved upon me of stating the grounds of my opinion.

The condition referred to is in the following language:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

And this is not all. Immediately preceding the attesting clause of the policy is the following:

> "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto."

No preliminary application is required under the terms of the policy.

It is to be observed that the clause first quoted is so plain as not to admit of construction. The policy is void, it asserts, if certain conditions as to ownership and title do not exist, unless by agreement indorsed on or added to the policy it is provided otherwise.

The majority opinion, while it speaks in a prefatory way of the rule that insurance policies are construed most strongly against the company, does not pretend to construe said words. On the contrary, the whole effort is to escape their force. While I should be prepared to sanction the proposition that any fair doubt as to the construction of the contract should be solved against the insurer, yet it is plain that where room to doubt concerning the meaning of the condition does not exist, and where there is no element of illegality or fraud present, the court should not undertake to strip the company's undertaking of a vital condition, and then enforce the promise, on the poor excuse that the property owner failed to read the contract. If there was no meeting of the minds, the court ought not to undertake to supply so vital an element. It is true that the forms of insurance policies are prepared by experts, and that it is the habit of the careless not to read the conditions which are made to underlie the undertakings of such companies, but if a reason for the breaking down of the limitation in question can be extracted from these circumstances, I do not know what limitation of liability exists in life or fire insurance contracts, or in the contracts of the great corporations generally which issue limited liability under-

takings in serving the public, that could not be brushed aside by the courts, where the failure to read the writing resulted in a hardship which might otherwise have been avoided.

It was said by one of the great writers of legal literature: "It is likewise a general and most inflexible rule, that wherever written instruments are appointed, either by the requirement of law or by the compact of the parties, to be the repositories and memorials of truth, any other evidence is excluded from being used, either as a substitute for such instruments or to contradict or alter them. This is a matter both of principle and policy: of principle, because such instruments are in their nature and origin entitled to a much higher degree of credit than parol evidence; of policy, because it would be attended with great mischief if those instruments upon which men's rights depended were liable to be impeached by loose collateral evidence." Starkie, Evidence (10th Am. ed.), *648.

While the rule of *contra proferentem* ordinarily seems to be applied in all of its vigor in construing insurance contracts, yet I am not aware of any well-considered case which countenances the idea that a party may be relieved upon so unwarranted an excuse as the one which the appellees in this case asserted. In *Wierengo* v. *American Fire Ins. Co.* (1894), 98 Mich. 621, 626, 57 N. W. 833, it was said: "In this case, where there was no written application, nor any terms of the policy agreed upon by parol except the amount, the insured must be charged with knowledge that the policy he receives contains the contract binding upon him as well as the insurer. He must know that the policy, which is the contract, contains the usual terms of such instruments. He may not lay it aside without reading, and, when he seeks to recover upon it, and finds that under its plain provisions he cannot recover, say: 'I did not read it. The insurer did not tell me what it contained. I did not know that it was necessary to tell

him about the title and condition of my property, and therefore I am not bound by its terms.' Had Mr. Pearson or his principal read the contract—which he could have done in a few moments—they would at once have known these plain and important conditions, which the defendant had the clear right to insert, and to make a condition of its validity. Certainly the insured must be held to some degree of diligence in obtaining knowledge of the contracts to which they are parties. Ignorance will not relieve a party from his contract obligations. The law only relieves him therefrom in cases of fraud, mistake, waiver, or estoppel. An insurer is not required by the law to inquire into the condition of the title to the property insured, or to inform the insured of all the conditions and terms of the policy to be issued, or to read it to him, or inform him of its contents. When received and accepted without objection, he must be held bound by its terms, unless these terms are waived by the insurer. This is the law of contracts, and there is no reason or authority for holding that an insurance contract is an exception thereto. A deed is the contract between the grantor and the grantee, although the grantee does not sign it. Its terms and conditions are binding upon the grantee, and he cannot avoid them except for one of the reasons above stated. If he accepts a deed without reading it, and there is no fraud on the part of the grantor, or mutual mistake as to its terms, he is bound by it. If a mortgagee accepts a mortgage without a covenant against prior incumbrances, or if it contains an express provision that it is subject to prior incumbrances, it is binding upon him, unless the covenant against incumbrances was omitted by fraud or mistake. The same rule applies to insurance contracts." The necessity that a fire insurance company, which for a small sum of money promises to pay a large amount of money by way of indemnity in case of fire, should be fully informed as to the extent of the risk is obvious. Chief Justice Marshall said, in

*Columbian Ins. Co.* v. *Lawrence* (1829), 2 Pet. \*25, \*49, 7
L. Ed. 335: "The contract for insurance is one in which
the underwriters generally act on the representation of the
assured; and that representation ought consequently to be
fair, and to omit nothing which it is material for the
underwriters to know.   \*   \*   \*   Generally speaking, in-
surances against fire are made in the confidence that the
assured will use all the precautions to avoid the calamity
insured against, which would be suggested by his interest.
The extent of this interest must always influence the un-
derwriter in taking or rejecting the risk, and in estimating
the premium.   So far as it may influence him in these
respects, it ought to be communicated to him.   Under-
writers do not rely so much upon the principles, as on the
interest, of the assured; and it would seem, therefore, to
be always material that they should know how far this
interest is engaged in guarding the property from loss."
So it was declared in *Syndicate Ins. Co.* v. *Bohn* (1894),
65 Fed. 165, 170, 12 C. C. A. 531, 536, 27 L. R. A. 614,
that limitations like the one in question "rest upon a sound
policy of the business of insurance—a policy founded in
reason, and in accord with an enlightened public policy;
the policy of reducing the moral hazard to which the un-
derwriter is exposed.   'Moral hazard,' in insurance, is but
another name for a pecuniary interest in the insured to
permit the property to burn.   Statistics, experience, and
observation all teach that the moral hazard is least when
the pecuniary interest of the insured in the protection of
the property against fire is greatest, and that the moral
hazard is greatest when the insured may gain most by the
burning of the property."

It ought not to be necessary, however, to seek to justify
the existence of a condition precedent.   It ought to be
enough that it is a component part of the contract, and has
not been waived, and that the contract must be made the
basis of recovery.   In the vigorous language of Woodward,

C. J., in *Pennsylvania Ins. Co.* v. *Gottsman* (1864), 48
Pa. St. 151, 158: "The ground of forfeiture is the con-
tract, not the opinion of a jury about increase of risk.
\* \* \* The suit is upon that contract, and if it is for-
feit, the suit falls with it. It cannot be enforced in behalf
of a party who violated a fundamental condition." There
are cases which support the view of the majority in this
case, but I assert that they are not only comparatively few,
but also that it is evident that they owe their origin to a
misapplication of the old doctrine of concealment. Before
the adoption of the standard policy, it was the practice to
embody the warranties of the assured in an application,
and as a result it followed that in many cases, where the
company had neglected to take an application, the only
defense which the company could assert was concealment.
Now, concealment involves the proposition that the assured
ought to have made the disclosure, and therefore the
courts, in passing on these cases, and the text-writers, in
discussing them, frequently made reference to the fact that,
as the representatives of the insurance company were ex-
perts, the assured had a right to suppose that as to the ordi-
nary risks, such as the condition of the title, etc., the com-
pany had acquainted itself with the facts. It was enough,
therefore, so far as the interest of the assured was con-
cerned, that he had an insurance interest. With the incoming
of the standard policy all of this was changed; but a few
courts, misapprehending the non-application of the doc-
trine of concealment to a peremptory condition precedent
that the ownership must be sole and unconditional, and the
title in fee simple, were led into error by the language of
the books to which I have referred. The condition in the
standard policy provides the manner in which the policy
may be made to take effect, where the ownership is not sole
and unconditional and the title in fee, namely, by pro-
curing a special indorsement to be placed on or added to
the policy; and the effect of such a condition as this is to

call on the policy holder to make disclosure, and. to authorize the company, at least in the absence of notice, to assume that the ownership and title complies with the condition. It is a well-known fact that insurance companies issue policies without a formal examination of the title, and,. in the face of the stipulation in the policy, the property owner has no right to assume that the company will not stand upon its rights.

In the absence of misleading conduct, waiver can only be predicated upon the relinquishment of a right which is known (Bishop, Contracts [2d ed.], §792; 29 Am. and Eng. Ency. Law [2d ed.], 1091, 1093), and the knowledge upon which a claim of waiver is based must be actual, and not merely constructive. *Aetna Ins. Co.* v. *Holcomb* (1896), 89 Tex. 404, 34 S. W. 915; *Orient Ins. Co.* v. *Williamson* (1895), 98 Ga. 464, 25 S. E. 560; *Mutual Fire Ins. Co.* v. *Deale* (1861), 18 Md. 26, 79 Am. Dec. 673; 16 Am. and Eng. Ency. Law (2d ed.), 935. And see *Hazlett* v. *Sinclair* (1881), 76 Ind. 488, 40 Am. Rep. 254; *Stockwell* v. *State, ex rel.* (1885), 101 Ind. 1.

The weight of authority, where a matter of principle is involved, is a minor consideration; but since I am not only so unfortunate as to differ with my brethren, but also to be confronted with a formidable amount of apparent authority for the conclusion reached, it becomes necessary to review their authorities. *Morotock Ins. Co.* v. *Rodefer Bros.* (1896), 92 Va. 747, 24 S. E. 393, 53 Am. St. 848, holds that the clause relative to unconditional and sole ownership does not have reference to the legal title, but to the interest of the insured in the property, and that therefore the existence of a mortgage does not violate said ·clause. The next case—*Manhattan Fire Ins. Co.* v. *Weill & Ullman* (1877), 28 Gratt. (Va.) 389, 26 Am. Rep. 364— involved the same point, and was a case where the ·agent knew that the property stood on leased ground. *Philadelphia Tool Co.* v. *British, etc., Assur. Co.* (1890), 132

Pa. St. 236, 19 Atl. 77, 19 Am. St. 596, is an obscure case
in its statement of facts, and seems to rest on the ground
that "the policy covering only the interest of the lessee,
the ownership of the fee becomes immaterial." In *West-
ern, etc., Pipe-Lines* v. *Home Ins. Co.* (1891), 145 Pa. St.
346, 22 Atl. 665, 27 Am. St. 703, the facts were these:
Insurance had been written on oil in a large storage tank.
There was no condition as to ownership of the real estate,
but the property had been described as situate upon certain
land. A flood had washed the tank containing the oil to
other real estate, where the fire occurred. The insurance
company denied liability because of this, and also because
the pipe-line company had but a qualified title to the oil.
It was held that the description of the real estate on which
the tank had been located was not a warranty against an
involuntary change in the location of the tank. As to the
lack of an absolute ownership of the oil, it was held that the
defense was not available, as the insurance company had
denied liability on another ground, and as the insurance
company was required to take notice, in view of the corpo-
rate character and business of the pipe-line company, of
the manner in which such business was ordinarily con-
ducted. *Short* v. *Home Ins. Co.* (1882), 90 N. Y. 16, 43
Am. Rep. 138, involved the condition against the premises
becoming vacant or unoccupied. The case seems to rest
largely on the fact that the agent testified that it was his
habit to make inquiry concerning matters that he regarded
as important. Although there are one or two statements
in the case concerning the duty of making inquiry, yet I
am of opinion, in view of *Weed* v. *London, etc., Ins. Co.*
(1889), 116 N. Y. 106, 22 N. E. 229, and *Quinlan* v.
*Providence Washington Ins. Co.* (1892), 133 N. Y. 356,
31 N. E. 31, 28 Am. St. 645, that the New York court of
appeals cannot be said to sanction the view that the funda-
mental conditions of a policy may be disregarded. In
*Hoose* v. *Prescott Ins. Co.* (1890), 84 Mich. 309, 47 N. W.

587, 11 L. R. A. 340, certain conditions upon which the validity of a policy depended had not been complied with, but the agent had actual knowledge of the facts, and the delivery of the policy was treated as a waiver of such conditions. In *Hall* v. *Niagara Fire Ins. Co.* (1892), 93 Mich. 184, 53 N. W. 727, 18 L. R. A. 135, 32 Am. St. 497, there was a waiver of the condition as to title, by the consent of the agent subsequently given to a transfer of the policy to a person who had acquired the fee-simple title. *Miotke* v. *Milwaukee, etc., Ins. Co.* (1897), 113 Mich. 166, 71 N. W. 462, was a case which turned on the proposition that in view of the conduct of the agent in dealing with the assured—an ignorant foreigner—it would be a fraud to permit the company to avoid its policy. In *Lycoming Fire Ins. Co.* v. *Jackson* (1876), 83 Ill. 302, 25 Am. Rep. 386, a finding in favor of the assured rested on testimony that the agent had actual knowledge as to the condition of the title. In *Morrison* v. *Tennessee, etc., Ins. Co.* (1853), 18 Mo. 262, 59 Am. Dec. 299, there was no provision in the policy concerning ownership. The case involves nothing but the doctrine of concealment. The holding in *Quarrier* v. *Peabody Ins. Co.* (1877), 10 W. Va. 507, 27 Am. Rep. 582, was that the existence of a deed of trust did not violate the condition as to sole and unconditional ownership. In *Georgia Home Ins. Co.* v. *Holmes* (1897), 75 Miss. 390, 23 South. 183, 65 Am. St. 611, there was a mortgage on the property. The assured had requested the agent to furnish an application and to inspect the house. The agent did not comply with these requests, but answered that he knew the property. It was held that the policy was issued on the presumed knowledge of the company, and it was not a defense that the agent was in error. *Vankirk* v. *Citizens Ins. Co.* (1891), 79 Wis. 627, 48 N. W. 798, involved the doctrine as to concealment. The citations to 1 Wood, Insurance (2d ed.), §212, p. 517, and 1 May, Insurance (4th ed.), §207, are to the same point. I shall

refer to the latter author hereafter.  *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624, must be regarded as overruled by *Sisk* v. *Citizens Ins. Co.* (1897), 16 Ind. App. 565.  As to the further authorities upon the point under discussion, which are found in the majority opinion, it must be admitted that the supreme courts of Nebraska, Montana, Washington, and California, and perhaps Kentucky, as well as the opinion in *Manchester Fire Assur. Co.* v. *Abrams* (1898), 89 Fed. 932, 32 C. C. A. 426, are properly cited as holding that the condition as to ownership and title does not avoid the policy.  In two instances there were dissents; in some of the cases there was a mere assumption in the discussion that it was the doctrine of concealment which was involved; while, in the cases which go further, it will be perceived that they also are based on the root error just referred to.

I turn now to the authorities which uphold my view. The following cases evince the peremptory character of the condition here involved, or of a like condition:  *Geiss* v. *Franklin Ins. Co.* (1890), 123 Ind. 172, 18 Am. St. 324; *Syndicate Ins. Co.* v. *Bohn, supra; Waller* v. *Northern Assur. Co.* (1881), 10 Fed. 232; *Crikelair* v. *Citizens Ins. Co.* (1897), 168 Ill. 309, 48 N. E. 167, 61 Am. St. 119; *Hinman* v. *Hartford Fire Ins. Co.* (1874), 36 Wis. 159; *Hebner* v. *Palatine Ins. Co.* (1894), 55 Ill. App. 275; *Dumas* v. *Northwestern Nat. Ins. Co.* (1898), 12 App. D. C. 245; *Duda* v. *Home Ins. Co.* (1902), 20 Pa. Super. Ct. 244; *Brown* v. *Commercial Fire Ins. Co.* (1888), 86 Ala. 189, 5 South. 500; *Liberty Ins. Co.* v. *Boulden* (1893), 96 Ala. 508, 11 South. 771; *Collins* v. *St. Paul, etc., Ins. Co.* (1890), 44 Minn. 440, 46 N. W. 906; *Weed* v. *London, etc., Ins. Co., supra; Fitchburg Sav. Bank* v. *Amazon Ins. Co.* (1878), 125 Mass. 431; *Sisk* v. *Citizens Ins. Co.* (1897), 16 Ind. App. 565; *Mers* v. *Franklin Ins. Co.* (1878), 68 Mo. 127; *Barnard* v. *National Fire Ins. Co.* (1887), 27 Mo. App.

26; *Westchester Fire Ins. Co.* v. *Weaver* (1889), 70 Md. 536, 17 Atl. 401, 18 Atl. 1034, 5 L. R. A. 478; *Phoenix Ins. Co.* v. *Public Parks, etc., Co.* (1896), 63 Ark. 187, 37 S. W. 959; *Orient Ins. Co.* v. *Williamson, supra; Rosenstock* v. *Mississippi Home Fire Ins. Co.* (1903), 82 Miss. 674, 35 South. 309. In the leading case of *Syndicate Ins. Co.* v. *Bohn, supra,* Sanborn, J., used the following language: "It is contended that the contracts in these policies, which exclude the Bohns from insurance under them upon any interest but that of unconditional ownership, are without binding force, because no inquiry respecting their title was made by the companies, and no statement concerning it was made by the Bohns, when these policies were issued. But neither inquiry nor statement before the issue of the policies was requisite to the validity of these contracts. The policies themselves, containing, as they did, the contracts that they should be void if the interest of the assured had not been truly stated to the company, or if it was not truly stated in the policy, or if it was not the sole and unconditional ownership, and a description of it was not indorsed on the policy, were pointed inquiries of the assured whether their interest was the sole and unconditional ownership of the property described, and their silence and acceptance of the policies was the answer. The policies themselves were notice to the Bohns that the companies deemed their interest that of unconditional ownership, that they insured them against loss to that interest only, and that they expressly excluded every other interest from the insurance unless the Bohns immediately notified them that they held a different interest, and caused a true description of it to be written into or indorsed upon the policies. The silent acceptance of the policies by the Bohns closed these contracts, and bound them to the agreement tendered by the policies, that every interest of theirs but that of unconditional ownership was excluded from the promised indemnity." In *Waller* v. *Northern Assur. Co.,*

*supra,* the policy provided: "If the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the assured,   *   *   *   it must be so represented to the companies, and so expressed in the written part of this policy; otherwise the policy will be void." The interest of the assured was only a lien in the nature of a mortgage, given to secure a loan of about $5,000. This fact was not represented to the insurer, and was not stated in the policy. It was said by McCrary, J.: "There are strong reasons for upholding and enforcing the provision of the policy under consideration. It is certainly a very reasonable and proper provision in a contract of insurance of this character, which requires the party seeking insurance upon property to state any facts which it is material for the insurer to know.   *   *   *   The provision in question is, therefore, one which must be upheld and enforced; not simply upon the ground that it is a warranty, and therefore to be enforced independently of its materiality, but upon the ground that it calls for the disclosure of material facts. *   *   *   But it is insisted that compliance with this provision of the policy was waived by the defendant, because its agent made no inquiry concerning the extent of plaintiff's interest, and plaintiff made no statement upon the subject. The evidence does not support this position. The contract was that if the interest of the assured was any other than the entire, unconditional, and sole ownership, then he was to represent the facts to the company—not that he was to disclose them truthfully if requested, or that he would make true and full answers to questions upon the subject. The duty of disclosing his interest, the same being less than the entire ownership, was plainly devolved upon the plaintiff, and for good reason, since he knew, and the agent of the company did not know, the facts. In other words, under the contract the defendant was authorized to assume that the property was owned absolutely by the ap-

plicant for insurance, unless the contrary was represented by him, and more especially in a case where the applicant held what appeared to be an absolute title.    A waiver of this condition of this policy cannot, therefore, be presumed from the mere fact that the agent of the defendant made no inquiry upon this subject.    The case might have been different if the plaintiff had been called upon to sign an application, and to answer written or printed questions touching his interest, and had failed to do so.    In such a case the issuing of the policy, notwithstanding a failure to answer some of the questions, might well be held a waiver of such answers.    *Hall* v. *People's, etc., Ins. Co.* [1856], 6 Gray 185; *Liberty Hall Assn.* v. *Housatonic, etc., Ins. Co.* [1856], 7 Gray 261.    And it may also be true that where the policy requires an application, and provides that it shall contain a full and true exposition of all the facts in regard to the condition, situation, value, and risk of the property insured, a company insuring without such application may be held to waive the representations required to be embraced therein.    *Commonwealth* v. *Hyde, etc., Ins. Co.* [1873], 112 Mass. 136.    These authorities are not in point, for the reason that in the present case no written application was provided for in the policy, and, as already stated, the duty of divulging the fact that he was not the full owner of the property devolved upon the plaintiff. Besides, it would be an unwarranted extension of the doctrine of estoppel to hold that a party may waive that, the existence of which he does not know, and is not in duty bound to ascertain."

In *Dumas* v. *Northwestern Nat. Ins. Co., supra,* the precise question which is here involved was before the court.    In the course of a careful opinion the court, after referring to such condition, said: "But it is said that all this is of no consequence, inasmuch as the defendant company made no inquiry as to the true condition of things, and there was no fraudulent concealment on the part of,

the plaintiff. And there is excellent authority for the doctrine, that 'as to the ordinary risks connected with the property insured, if no representations whatever are asked or given, the insurer must be supposed to assume them; and if he acts without inquiry anywhere concerning them, he seems quite as negligent as the insured, who is silent when not requested to speak.' *Clark* v. *Manufacturers Ins. Co.* [1850], 8 How. *235, 12 L. Ed. 1060. The agents of insurance companies are usually experienced men, well informed as to the information which they should have in anticipation of the risk which they assume; and the rule is not unreasonable which would require them to make all due inquiry for the procurement of such information. Nor is it unreasonable that the insured should be held harmless from the mere failure to give information, when he is not interrogated, and when perhaps he is not aware of the importance or immateriality of the matter to which the information should extend. But this is not a case of representation or misrepresentation, of failure to give information or failure to elicit it by proper inquiry. The parties have deliberately put it into their contract, and have made it an essential condition of that contract that the contract itself should not be binding if there was any mortgage on the property or the title was not that of unconditional ownership. There was no inhibition by law against the insertion of such a condition in the contract; and it may well be that its insertion was a matter of precaution, to guard as well against the negligence or failure of agents to elicit proper information, as against the negligence or failure, not fraudulent, of persons seeking insurance to give such information. The condition is not illegal and does not contravene any rule of public policy; and even if its practical effect should be held to be to throw upon the insured party the burden of giving voluntarily the information which otherwise the insurer would have been required to elicit by proper inquiry, we know of no rule of law that

would preclude parties from contracting to that effect, if they so desire." *Duda* v. *Home Ins. Co., supra,* is a well-considered case upholding the views I am endeavoring to maintain. I refer to it for an explanation of the Pennsylvania cases. In *Brown* v. *Commercial Fire Ins. Co., supra,* the court said: "The assured by accepting a policy in which such condition is incorporated, becomes bound thereby; and when he claims to enforce the contract, and receive its benefits, he is estopped from denying his assent to the stipulation." In *Weed* v. *London, etc., Ins. Co., supra,* a policy was issued to insure the "Estate of O. Richards." Richards had deeded the property to Dean Sage, in trust to sell the same and distribute the proceeds of such sale *pro tanto* among the creditors of said Richards, any residue, after the payment of debts, to be reconveyed to said Richards or to his heirs. The agent who issued the policy knew of the failure of Richards, but did not know of the trust deed. There was a standard form of policy, and it was held that "this condition as to the ownership of the property was precedent as to the attaching of the risk; and as Richards' estate had no title it was broken upon the delivery of the policy. Upon this point of the case, therefore, the plaintiff failed to prove a valid contract and was not entitled to recover." In *Collins* v. *St. Paul, etc., Ins. Co., supra,* the court, after denying the right to a reformation of the policy upon the facts, said: "Even if so reformed, no recovery could be had, for the policy provides that the company shall not be liable 'if the interest of the assured in the property is not one of absolute and sole ownership,' and it appeared beyond controversy that the plaintiff had only a life estate in the property. Of course she had an insurable interest, but that interest was not insured. The policy expressly excluded from its operation any interest other than the absolute and sole ownership." In *Crikelair* v. *Citizens Ins. Co.* (1897), 168 Ill. 309, 310, 48 N. E. 167, 61 Am. St. 119, Boggs, J., in

delivering the opinion of the court, used the following language: "By the stipulation in the policy, the terms of which are plain, direct, and unambiguous, the parties hereto agreed that if the insured property, at the time the insurance was effected, was encumbered by chattel mortgage, the indemnity should not attach but the policy should be void. This was the contract of the parties deliberately made, and the only question presented is, whether they are bound by it. They were competent to enter into the stipulation, no rule of law was contravened by it, and there is no ground apparent to us upon which to base a claim of either estoppel or waiver. The law declared by the greater weight of authority is that, where a policy contains a stipulation such as the one in the case at bar, and the property be, at the time of the execution of the policy, covered by a mortgage, no recovery can be had unless it appears that there was a waiver or estoppel by which the company is precluded from relying on the contract."

The text-writers may ordinarily be relied on to make an unbiased statement of the adjudications as they are, and therefore I quote briefly from some of the writers on the law of insurance. A late writer, after referring to the condition as to ownership and title which is found in the standard policy, makes this comment: "Without this requirement there would be no duty incumbent on the insured to state the character of his interest, provided he had an interest that was insurable. The condition above quoted, however, requires a description of that interest, and it seems that the condition applies even to those policies that are issued without a previous application; for, if the policy does not elsewhere contain a statement of the character of the interest, it will be implied, by reference to the latter condition, that the interest is represented as being sole and unconditional." Vance, Insurance, p. 443. Another writer says: "There is some conflict of authority on the question of the binding effect of provisions of this

character in a policy issued without a written application. The weight of authority doubtless supports the view that the insured, by accepting the policy, is charged with knowledge of its contents." Elliott, Insurance, §257. Still a third text-writer states the doctrine thus: "A condition that if the insured is not the sole, entire, and unconditional owner the policy shall be void is reasonable and valid, and violation of it will prevent recovery. And failure to disclose the real state of the title if not sole, etc., will be fatal although the insured was not questioned as to that fact." 1 May, Insurance, §287a. In 13 Am. and Eng. Ency. Law (2d ed.), 228, it is said: "Explicit questions are largely or wholly replaced by conditions that the interest of the insured must be truly stated, and that if the title or interest is other than one specified, it must be specifically described, or the insurance will be avoided; and the statements of title in the policy, where there are such conditions, are construed in the same manner as answers to express interrogatories. The conditions have the effect of questions as to the nature of the title or interest, and in case a statement thereof would be false or insufficient if made in answer to a question, or if the facts are not disclosed which would be required in such answers, there is a breach of the contract. Where such conditions are contained in the policy, and there is no statement of the title or specific interest, an acceptance of the policy amounts to a representation by the insured that his title or interest is that stated in the condition, and if his title or interest is substantially different, the insurance is avoided." The case of *Geiss* v. *Franklin Ins. Co.* (1890), 123 Ind. 172, 18 Am. St. 324, is deserving of special attention, since it is a decision of this court, and involves practically the same question as the one before us. There was a condition as to sole, absolute, and unconditional ownership in the policy, and among other things which the company agreed to insure was a soda-fountain and apparatus, which had been pur-

chased under a conditional-sale contract, and had not been fully paid for. It appeared in the evidence that the plaintiff was not aware of the legel effect of the contract of conditional sale, so far as it affected the ownership of the property, until he had taken professional advice after the fire. It was held that the policy was entirely void. Mitchell, C. J., speaking for the court, said: "It is conceded that the assured was not the sole, absolute, and unconditional owner of the soda-fountain, and apparatus connected therewith. It follows, as a matter of course, that, as applied to that item of property, the policy was void. *Carpenter* v. *German-American Ins. Co.* [1889], 52 Hun 249, 4 N. Y. Supp. 925. The question is, can it be upheld as respects the other separate and distinct classes of property? * * * We fully appreciate the unfortunate situation of the assured, but courts of law cannot be made asylums in which every person who has made a mistake can take refuge against his own contract deliberately entered into. Where the validity of the insurance is made to depend upon the assured's being the absolute and unconditional owner of the true title of the property insured, a failure to set forth the title with substantial accuracy renders the policy void, not only as to the property, the title to which is not truly represented, but all other property covered by the same policy, and subject to the same risk. This is so, even though the owner had no intention to deceive." It thus appears that we have a case in our own reports which the principal opinion is virtually overruling.

The conclusion of the majority is opposed to principle; it is out of accord with the weight of authority, and it involves a disregard of the doctrine of *stare decisis*. As I have attempted to point out, this holding cannot be maintained if the court looks to the solemn dispositive agreement of the parties in determining their rights. I cannot give my sanction to a decision that nullifies the most important element in the contract, from the standpoint of the com-

pany. It is to be remembered that fire losses are in almost every instance paid out of the premiums received, and not out of the capital of the company. Careful people, who read their policies, are entitled to some consideration, and ought not to have their premiums enhanced by the fact that essential limitations of liability put into insurance policies are disregarded by the courts. I cannot better conclude this portion of my opinion than by calling attention to the following language of Story, J., in *Carpenter* v. *Providence Washington Ins. Co.* (1842), 16 Pet. 495, 10 L. Ed. 1044: "The public, too, have an interest in maintaining the validity of these clauses, and giving them full effect and operation. They have a tendency to keep premiums down to the lowest rates, and to uphold institutions of this sort, so essential, in the present state of our country, for the protection of the vast interests embarked in manufactures, and on consignments of goods in warehouses. If these clauses are to be construed with a close and scrutinizing jealousy, when they may be complied with in all cases, by ordinary good faith and ordinary diligence on the part of the assured, the effect will be to discourage the establishment of fire insurance companies, or to restrict their operations to cases where the parties and the premises are within the personal observation and knowledge of the underwriters. Such a course would necessarily have a tendency to enhance premiums; and to make it difficult to obtain insurances where the parties live, or the property is situate, at a distance from the place where the insurance is sought. But, be these considerations as they may, we see no reason why, as these clauses are a known part of the stipulations of the policy, they ought not to receive a fair and reasonable interpretation according to their terms and obvious import. The insured has no right to complain, for he assents to comply with all the stipulations on his side, in order to entitle himself to the benefit of the contract, which, upon reason or principle, he has no right to ask the court

to dispense with the performance of his own part of the agreement, and yet to bind the other party to obligations, which, but for those stipulations, would not have been entered into."

As to the question of pleading, I am of opinion that the answer of appellant was good without an averment that it had tendered a return of the premium. The holding of it after knowledge of the fact that the risk had never attached would at most operate as a waiver, and matter of that character ought, in the order of things, to come from the plaintiff. It appears to me that if there is nothing further in the case than a failure of the minds of the parties to meet, the case is one for a return of the premium. *New York Life Ins. Co.* v. *Fletcher* (1886), 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; *Waller* v. *Northern Assur. Co.* (1884), 64 Iowa 101, 19 N. W. 865. I vote for a reversal.

## ON PETITION FOR REHEARING.

JORDAN, J.—Appellant has petitioned for a rehearing and supported the same by an able argument on the part of its counsel. We have examined the authorities cited by counsel and have again given the case careful and patient consideration. Upon the question here involved the authorities may be said to "fight on both sides." Nevertheless, they are not so overwhelmingly on either side that they should be held, as seemingly insisted, to preclude us from adopting and following what we believe to be the better rule and the one which, because of its fairness and reasonableness, commends itself to our approval. It is admitted that our holding at the former hearing upon the point in issue is sustained by the supreme courts of Nebraska, Montana, Washington, California, and "possibly Kentucky," and by the decision of the court in the case of *Manchester Fire Assur. Co.* v. *Abrams* (1898), 89 Fed. 932, 32 C. C. A. 426, but

this concession is certainly too narrow, for, with the courts hereinbefore mentioned must be classed or included the supreme courts of Michigan, Oregon, Virginia, Mississippi, Pennsylvania, Missouri, Alabama, Wisconsin, West Virginia, and probably New York. The decisions of some of the latter courts directly sustain the doctrine in question, while others may at least be said indirectly to support the principle. To the cases or authorities cited and relied on by this court in its original opinion herein, we may add the following: *Allesina* v. *London Ins. Co.* (1904), 45 Ore. 441, 78 Pac. 392; *Union Assur. Soc.* v. *Nalls* (1903), 101 Va. 613, 44 S. E. 896, 99 Am. St. 923; *Farmers, etc., Ins. Co.* v. *Mickel* (1904), (Neb.), 100 N. W. 130; *Brunswick, etc., Co.* v. *Northern Assur. Co.* (1905), 142 Mich. 29, 105 N. W. 76; 1 Wood, Insurance (2d ed.), §176; 3 Cooley, Briefs on Insurance, 2630, 2631.

In the appeal of *Allesina* v. *London Ins. Co., supra,* the policy there involved, when issued, contained a printed provision that it should be void "if the subject of the insurance be personal property, and be or become encumbered by a chattel mortgage." This policy was issued upon an oral application, the agent of the company making no inquiry of the insured concerning liens or encumbrances upon the property, nor were there any statements or representations made in reference thereto by the insured, and he had no knowledge that such information was material, or that the policy to be delivered would contain any provision in reference thereto, or that if the company knew of the mortgage upon the property it would decline to assume the risk. The insured paid and the company received and accepted the premiums, and the property was destroyed by fire during the life of the policy. The court, in that case, said: "The only question on this appeal is whether, under these circumstances, the defendant can defeat a recovery on the ground that the policy issued by it and delivered to the plaintiff and for which he paid and it accepted and re-

tained his money was invalid from the beginning because of the mortgage clause." This case, under the facts, may be said to be on principle on "all fours" with the case at bar. The policy involved in that appeal was sustained. In deciding the case the court, in the course of its opinion, said: "A contract of insurance, like any other contract, must, of course, be given force and effect according to its terms as agreed upon by the parties, but provisions in the printed forms, inserted for the benefit of the insurer, may be waived by it in special instances. In determining whether there has been such a waiver, a court should not overlook the fact that insurance policies are prepared by the company for general use, without reference to particular cases, and contain divers and sundry provisions and stipulations concerning different subjects. The contract is not like ordinary contracts between individuals, wherein every clause and stipulation is considered and agreed upon by the parties before the agreement is executed. A policy of insurance is prepared in the office of the company and becomes binding on the assured because it is delivered to and accepted by him. In accepting it he has a right to assume that the company does not intend to insist upon the printed clause therein relating to encumbrances on the property if it makes no inquiry of him concerning the matter, and he has made no statements in reference thereto, and has not been advised that the question was at all material. The preparation and issuance of the policy is the act of the company, and if, in pursuance of a previous agreement to insure, it issues and delivers a policy purporting to cover loss or damage by fire, and accepts and receives the money of the insured, without making any inquiry of him as to encumbrances, or without advising him of the effect on his contract of an encumbrance, it is receiving and accepting his money under circumstances but little short of false pretenses, if the contract is void from the beginning, and never in fact had any force

or validity, because of a provision inserted therein by it without the knowledge of the assured, rendering it void if the property is encumbered. In such a case the company would not only wrongfully receive and accept the money of the insured, but would mislead him into the belief that his property was insured, when in fact it was not, thus deceiving a party honestly seeking and paying for insurance." In 1 Wood, Insurance (2d ed.), §176, the rule is stated as follows: "When a policy is issued upon a verbal application, without any representations in reference thereto, all information relative to the risk, except such as is unusual and extraordinary, is waived, and the policy is valid, even though it contain a clause or stipulation that 'the insured covenants that the representations given in the application for this insurance contain a just, full and true exposition of all facts and circumstances in respect to the condition, situation, value and risk of the property insured,' and, although the policy professes to be made upon the faith or representations made by the insured, yet, it is valid, even though no representations whatever were made in reference to the risk, and the lack thereof is not a matter of defense. The insurer cannot charge the assured with laches, induced by its own conduct." In 3 Cooley, Briefs on Insurance, pp. 2630, 2631, the author says: "If an insurance company issues a policy of insurance without any application, or without representations in regard to certain facts, the company will be presumed to have written the policy on its own knowledge, and cannot complain, after loss, that such facts were not correctly stated in the policy or disclosed by the insured. * * * Analogous to the rule stated is another one to the effect that though the policy by its terms requires the disclosure of all material facts, yet if the insurer issues it on an oral request or application, and makes no inquiry in regard to matters covered by certain conditions in the policy—as, for instance, encumbrances—it will be assumed that the insurer waives knowledge as to such

facts." The author says, however, that the rule stated is not supported by all the authorities, but, on the contrary, it is a mooted question whether an insurer waives the condition in a policy by issuing it without inquiry.

While it is true that the *quantum* of appellees' interest or title in the property insured was not a fee simple, still they had an insurable interest as tenants for life, and that is the only interest which appellant can be said to have insured, and the value of the property destroyed by fire, when tested by such interest, would be the measure of the company's liability. We cannot discover wherein appellant has been actually prejudiced by reason of the fact that the interest of appellees in the property insured was not that of a fee simple. Possibly it might be said that the fact that appellees were not the owners in fee might afford a temptation or inducement for them to set the property on fire, on the supposition that they would receive the full amount for which it was insured, regardless of the value of their interest. As appellant company did not in any manner inquire of appellees in respect to their interest in or title to the property, they certainly had no reasons for presuming when they paid the price of the insurance and received the policy issued to them that the company would not have insured the property had it known that their interest in the building insured and in the premises upon which it was located was that of a life estate instead of a fee simple. Generally speaking, it may be asserted that it is not the custom of the insurance company to place the policy to be issued by it before the person to be insured prior to its delivery to him, but the first opportunity afforded him for an examination of the many printed conditions and stipulations therein contained is after he has paid the premium for the insurance and the policy has been delivered. It ought not to be considered or regarded that he agreed to all of the conditions and

stipulations in the policy before he was aware or had knowledge thereof, especially in respect to such stipulation or condition declaring that the policy shall be void if his interest in or title to the property insured is other than that therein stipulated by the company without its having made any inquiry of him relative to his interest or title in or to the property which he desired insured, or in the absence of any representations or statements made by him in respect to his interest or title.

Appellant's learned counsel contend that it cannot be asserted that it waived its right to repudiate the liability upon the policy unless it is shown it had knowledge of all of the facts constituting the waiver. But it certainly had knowledge of its own conduct in the matter, and a waiver may be manifest by conduct as well as by words. *Phenix Ins. Co.* v. *Tomlinson* (1890), 125 Ind. 84, 9 L. R. A. 317, 21 Am. St. 203.

Possibly, with equal force, it might be said that appellees ought not to be considered as having consented or agreed, without knowledge thereof, to the condition or stipulation in the policy which avoided the insurance, if their interest or title to the property was otherwise than that of a fee simple. It is true that it can with plausibility be asserted that it was their duty to read the policy issued to them, but suppose they did read it after its delivery and the payment by them of the premium and then discovered the provision in respect to a forfeiture, they were not then in a position, and had not the right, to cancel or surrender the policy and recover back the premium which they had paid; for the very moment the risk actually attached they could not thereafter have recovered back the premium. *Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254; *Phenix Ins. Co.* v. *Tomlinson, supra.*

Suppose they had made a demand thereafter of appellant company for a return of the premium paid, the latter

would possibly have parried the demand by asserting that its right under the circumstances was one which it could at its option waive, therefore it would retain the premium paid by appellees and await results. The case of *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624, to which we referred in the former opinion, presented the question of a waiver of the breach of the conditions contained in the policy therein involved by reason of an existing mortgage encumbrance against the property. That case, upon the issue of waiver as herein involved, is directly in point, and supports our holding, and upon the question as to what will constitute a waiver of a forfeiture clause in a policy the case has not been overruled, as contended by counsel, by any of the later decisions of the Appellate Court.

In *Continental Ins. Co.* v. *Munns* (1889), 120 Ind. 30, 5 L. R. A. 430, this court held that the neglect of the party insured to make known facts which the insurance company may regard as material to the risk is not a breach of a condition in the policy avoiding it. The court in that case asserted that the insured had the right to assume that the insurance company would make inquiry concerning all facts, except such as it is supposed to know, or which it regards as immaterial. In the course of the opinion in that appeal this court said: "An applicant for insurance is not bound, unless inquired of, to disclose whether or not the property insured is encumbered. As the public records usually give information in reference to such matters, he may assume that the insurer knew of any existing encumbrances, or deemed it immaterial whether or not the property was encumbered." So, in this case, possibly appellees may have assumed that appellant made no inquiries of them in respect to their particular interest in the property in question because it had ascertained from the public records of what that interest con-

sisted.    Much stress is placed by counsel for appellant upon the fact that the policy in this case is what is denominated a "standard policy," all of which class of policies is said to contain the sole-ownership clause or stipulation. It is argued that by the use of these policies all inquiries of the insured to disclose the extent and condition of his title to or interest in the property has been rendered unnecessary, and is so held by the courts; but an examination of the cases which we have cited will prove the contrary, for at least in many of them, if not all, the policies involved embrace the sole-ownership clause or a stipulation against existing encumbrances.    Nevertheless, the courts affirmed that notwithstanding this clause or stipulation, where there was nothing in the policy requiring the insured to disclose the character or condition of his title to the property or the extent of his interest therein, and, if the insurance company had failed to make an inquiry in relation thereto, and issued the policy without any representations or statements made by the insured in respect to the character or extent of his interest or title, the company could not be heard to complain that his interest was less than a sole ownership or was encumbered by an existing mortgage lien.    The case of *Geiss* v. *Franklin Ins. Co.* (1890), 123 Ind. 172, 18 Am. St. 324, is relied upon by appellant.    In that case, however, there was no issue raised or tendered of a waiver upon the part of the company of the condition in the policy that it should be void "in case the assured was not the sole, absolute, and unconditional owner of the property."    Therefore that case cannot be said to lend any support to the question of waiver at issue in this appeal.    It may probably be a mooted question as to whether the insured in that case had any insurable interest in the soda-fountain, the title of which, under the agreement between him and the seller, was to remain in the latter until the purchase price thereof had been paid in

full.    So far, however, as the decision in that case can be said to announce or support a principle contrary to that which we assert and adhere to in this case, it is expressly disapproved.

We are satisfied with the conclusion which we have reached in this case, and the petition for rehearing is therefore overruled.    All concur except Gillett, J.